# FIFTH DEPARTMENT

### AT

## GENERAL TERM,

## January, 1893.

---

66  531
139a  87

## THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* AUSTIN J. CAMP, Appellant.

*Kidnapping — placing a person in an insane asylum — procedure under chapter* 446 *of Laws of* 1874 — *criminal intent essential to the crime — negligence not sufficient — proof required to sustain a conviction.*

Where a father was indicted for the crime of kidnapping, under section 211 of the Penal Code, in having placed his daughter in an insane asylum, where she was detained twenty-five days and then discharged as sane, and it appeared on the trial that the defendant had instituted proceedings before a county judge to have his daughter declared insane, and had obtained the usual certificate of insanity, under chapter 446 of the Laws of 1874, and the requisite approval of the judge, and had taken his daughter to the asylum under such certificate and approval:

*Held*, that it was improper to instruct the jury, in effect, that they might render a verdict of guilty, although they should find that the defendant was sincere and honest in his motives, unless they should also find that he exercised the care and foresight which an ordinarily prudent man would, in their opinion, exercise in the premises before instituting the proceedings for taking his daughter to the insane asylum.

Negligence, which may support a civil action, cannot, in criminal cases, be substituted for the essential element of malice or criminal intent required to support a conviction upon a criminal charge.

An indictment for kidnapping, under section 211 of the Penal Code, based upon the placing of a person in an insane asylum through proceedings under the statute (Laws of 1874, chap. 446), cannot be sustained or a conviction thereunder upheld simply by proving that the person so placed in an asylum was,

in fact, sane at the time the proceedings for his incarceration were instituted by the defendant.

In order to sustain a conviction, under said section 211 of the Penal Code, it must be made to appear, besides the actual unwilling detention or imprisonment, first, that the seizure and confinement were "without authority of law" (these words having here no reference to "due process of law"); and, secondly, that the imprisonment or confinement was done " secretly."

APPEAL by the defendant, Austin J. Camp, from a judgment, entered in the Cayuga county clerk's office on the 3d day of July, 1891, on the conviction of the defendant at the Cayuga Oyer and Terminer of the crime of kidnapping, under section 211 of the Penal Code.

*Frank D. Wright*, for the appellant.

*A. P. Rich*, for the respondent.

MACOMBER, J.:

The defendant was indicted at the Oyer and Terminer of Cayuga county in October, 1890, for the crime of kidnapping. The trial came on in that court at the May term in 1891, when the defendant was found guilty of the crime charged in the indictment, under section 211 of the Penal Code. Judgment was entered in pursuance of a verdict, but not till after a motion had been made for a new trial and denied. The defendant was sentenced by the court to confinement in the State's prison for two and one-half years. From that judgment this appeal is taken.

The person alleged to have been kidnapped was Adah Baird, a woman aged twenty-nine years, who was one of the three children of the defendant. She was, at the age of seventeen, married to one Soveral J. Baird, and, after cohabiting with her husband for five years, she left him, for good cause, and, with her child, took up her abode with her father in Moravia, N. Y. After remaining with her father some time, she removed to the house of her grandfather, Jeremiah Camp, of the same village, who was a man of considerable property, but was, in a measure, helpless through blindness.

The people claimed, upon the trial, that the taking up of the residence by Adah Baird with her grandfather, and the expressed purpose of the latter to convey to her his house and lot then occu-

pied by him, together with considerable sums of money, were acts inimical to the defendant, and furnished a sufficient motive for his subsequent conduct. While, on the other hand, much evidence is given to show serious aberrations of mind on the part of the daughter, justifying the belief that she was so far of unsound mind as to be incapable of properly caring for herself. On the 2d day of August, 1890, after conferring with a justice of peace in regard to the matter, and being advised by the latter to see the county judge of Cayuga county in the premises, the defendant called upon the county judge and stated the case in regard to his daughter, who was represented by him to be insane. At such time the county judge said that he should appoint two entirely competent and disinterested physicians to inquire into the mental condition of the defendant's daughter, namely, Dr. Allison, then in charge of the State Hospital for the Insane at Auburn, and another reputable and well-known physician by the name of Dr. Harter. These physicians, after the examination of Adah Baird, and after a conference with the defendant in regard to her previous conduct, executed and delivered to the defendant the usual certificate of insanity, under chapter 446 of the Laws of 1874, and this certificate was duly approved by the county judge on the 5th day of August, 1890; and thereupon the defendant, having been furnished with such certificate and approval by the county judge, took his daughter to the State Hospital for the Insane at Utica, where she was detained for twenty-five days, and was then, by the doctors in charge of that infirmary, discharged as a sane person.

The section of the Penal Code under which the defendant was indicted is as follows: "Section 211. A person who willfully — ' 1. Seizes, confines, inveigles or kidnaps another, with intent to cause him, without authority of law, to be secretly confined or imprisoned within this State * * * is guilty of kidnapping, and is punishable by imprisonment for not more than fifteen years.' "

The learned justice, at the trial, ruled and decided, in various forms, that, however honest the defendant may have been in his belief of the actual insanity of his daughter, yet if, in instituting the proceedings culminating in her involuntary confinement in the State hospital at Utica, he did not exercise that care and discretion which an ordinarily prudent man should exercise under like cir-

cumstances, the jury could convict him of the crime charged in the indictment.

At the close of the people's case in chief, on deciding the motion for a direction of a verdict for the defendant, the learned judge said : " If he (the defendant) believed her (Adah Baird) to be insane, then the question would have to be submitted to the jury, whether, under all the circumstances, the facts were such tending toward her insanity as would lead men of ordinary prudence and caution and discretion to believe that she was insane. That will be the question. His belief must be founded, as I said before, upon such a state of facts that an individual acting honestly, first, would believe her to be insane ; next, upon such a state of facts that a person of ordinary prudence, caution, discretion and intelligence would be led to believe, under the circumstances, that she was insane. That he must have reasonable grounds of belief." In his charge to the jury the learned judge further said : " There is another question which I desire to call your attention to, and that is, whether the defendant had probable cause to believe that his daughter was insane. That does not depend so much upon the fact whether she was insane or not, if the apparent facts were such that a discreet and prudent person would be liable to believe that she was insane, and he acted upon that belief in good faith, then he would not be guilty of the crime, although she may not have been insane at the time. Upon the question whether the defendant had probable cause for instituting the proceedings, you are instructed that the true inquiry is, not what the actual facts were as to the insanity of the defendant's daughter, but what did the defendant have reason to believe, and what did he believe, in reference thereto at the time he made the complaint. In other words, was there any foundation for making the complaint, and was there any foundation for him, having known his daughter all her lifetime, in believing that she was insane."

At the close of the charge, the learned counsel for the defendant asked the court to instruct the jury as follows : " That if the jury have any reasonable doubt over the question submitted to them as to whether Camp had reasonable ground to believe that his daughter was insane, that the doubt must be given to the defendant and they must acquit." That proposition was charged. It will thus be seen that the verdict of guilty rendered by the jury may

have been, and probably was, under the facts disclosed, based upon the ground that while the defendant was sincere and honest in his motives, being desirous, as the father of the supposed insane person, to act solely for her good, and that of her family; yet, unless he exercised the care, prudence, foresight and circumspection which an ordinarily prudent man, under the standard to be erected by the jury themselves, should exercise, then they could find the defendant guilty of the charge made in the indictment. This we deem to be such an error as calls for a reversal of the judgment, irrespective of the contention made by the district attorney heretofore stated. This doctrine annihilates, as it seems to us, that essential element to a conviction of a person upon a criminal charge, namely, a criminal intent. It is inconceivable that if the accused acted honestly, and under such lights as he possessed, but still not with that degree of intelligence and care which the jury, perhaps, in an arbitrary way, might say an ordinarily prudent person should exercise, he could be convicted of the crime of kidnapping under this statute.

Furthermore, this doctrine assumes that the jury may find the motive, which so often plays an important part in criminal trials, was good and commendable. If this doctrine were upheld, we should have, therefore, presented the anomalous situation of a conviction upon a criminal charge of a person who, actuated with honest motives for the benefit of a member of his family, instituted, without malice and without criminal intent, proceedings under a statute designed for the protection of the unfortunate. With great deference to the learned justice presiding at the trial, we are constrained to hold that this ruling, though it may be applicable in a civil action to recover damages for false imprisonment, cannot be sustained under our criminal laws. Malice and negligence cannot thus be confounded together. " Malice," says Wharton on Criminal Laws (126), " arises from an evil purpose; negligence, from a failure of purpose; malice is imputable to a defect of the heart, negligence to a defect of intellect." " Malice imports an evil intent, or wish or design to vex, annoy or injure another." (Penal Code, 718, sub. 3.)

Though in other portions of the charge of the learned justice, the jury was explicitly instructed that a criminal intent on the part of the accused must be found before he could be convicted of crime,

yet it seems to us that the jury must have understood, from the rulings and instructions hereinbefore quoted, that the defendant might be convicted of the crime of kidnapping if he failed to exercise a proper degree of foresight in the premises before instituting the proceedings for taking his daughter to the State Hospital; and, for aught that we can find in the record, the verdict may have been found solely on that ground.

The foregoing views necessarily lead to a reversal of the judgment appealed from, and to a new trial. But there is another and a more radical reason why the conviction of the defendant cannot be upheld. Upon the trial it was proved that the defendant acted throughout under the provisions of chapter 446 of the Laws of 1874, prescribing the steps necessary to be taken for the confinement of insane persons in the insane asylums of the State. Indeed, the indictment alleged that there was procured by the defendant the prescribed statutory certificate of two reputable physicians declaring the defendant's daughter to be insane before her detention at the State Hospital at Utica. Though the approval indorsed on such certificate by the county judge is not alleged in the indictment, yet the same was proved, and could, doubtless, have been put in evidence as a part of the people's case, being a material and necessary part of the warrant of authority to the hospital authorities for the detention of the patient for more than five days.

The learned district attorney has presented to us an argument to the effect that this indictment may be sustained, and the conviction of the defendant upheld, simply by proving to the jury that the daughter was, in fact, sane at the time that the defendant instituted these proceedings for her incarceration. We cannot assent to the conclusion reached by this argument, for the reason that it is contrary to the statute itself under which the defendant was indicted. Nor do the authorities upon which he mainly relies (*Ayers* v. *Russell*, 50 Hun, 282; *Hurley* v. *Martine*, 10 N. Y. Supp., 92; the latter affirmed by the Court of Appeals, 128 N. Y., 657), which were civil actions to recover damages for false imprisonment, in any respect support the contention that a person may be convicted under the statute by such evidence alone. In order to sustain a conviction under the statute, there must be made to appear, besides the actual unwilling detention or imprisonment, two things:

*First.* The seizure and confinement must be shown to have been, in the words of the statute, "without authority of law." This language "without authority of law" has no reference whatever, as counsel seem to think, to " due process of law." If the statute is observed, as was done in this instance by the defendant whose acts were regulated by its provisions, how can it be said that the imprisonment by the defendant of his daughter was "without authority of law?" The two reputable physicians certified to the daughter's insanity, and the county judge duly approved thereof under the statute, and the same was placed in the defendant's hands before he took any steps towards her restraint or removal to the State hospital.

In no sense can the act, with which the defendant is charged, be said to have been done "without authority of law." The burden of proof rested with the people to establish their allegation in this regard, and they failed to do so.

*Secondly.* The imprisonment or confinement must be shown to have been done "secretly." The phrase of the statute is "to be secretly confined or imprisoned within the State." In this respect, also, the people failed to establish any case against the defendant. Nothing could have been more public than the taking of the supposed insane person, and her detention in one of the public institutions provided by the State for insane persons.

The people having failed to make a case against the defendant in the two particulars last mentioned, the motion that the court advise the jury to acquit the defendant should have prevailed. As it is manifest that no stronger case can be made out by the people, a new trial seems to be unnecessary.

It follows that the judgment and conviction should be reversed.

DWIGHT, P. J., and LEWIS, J., concurred.

Judgment of conviction of the Oyer and Terminer appealed from reversed and the defendant discharged.