## Court of Appeals.

October 3, 1893.

## PEOPLE v. AUSTIN J. CAMP.

(54 St. Rep. 455; 139 N. Y. 87.)

1. Appeal—New trial.

> Where the general term reversed the conviction upon the ground that the verdict is against the weight of evidence or that justice requires a new trial, or for any other errors which can be obviated or corrected upon a new trial, such court should, instead of discharging the defendant, order a new trial.

2. Same.

> To uphold the decision of the general term in discharging the defendant, the court of appeals must be able to see in the record some fundamental obstacle to his conviction for the crime charged in the indictment.

3. Kidnapping—Insane asylum.

> When the person seized or inveigled is not removed from the state, in order to constitute the crime of kidnapping, the intent must be secret confinement within the state.

4. Same.

> Where a person is seized and removed in broad day light over public highways and railroads in the presence and view of many people, and taken to a public asylum where there are public officials, numerous physicians and other people, it does not constitute the offense of kidnapping.

The defendant was indicted, tried and convicted in the Cayuga county oyer and terminer for the crime of kidnapping. He appealed to the general term of the supreme court, where the conviction was reversed, and he was discharged. The People then appealed to this court. The facts appear sufficiently in the opinion.

Louis Marshall and A. P. Rich, for appellants.

Frank D. Wright, for respondent.

EARL, J.—We think the court below could, under section 527 of the Code of Criminal Procedure, properly have reversed this

conviction on the ground that the verdict was against the weight of evidence, or that justice required a new trial. But if it had reversed the conviction upon either of these grounds, or for any other errors which could be obviated or corrected upon a new trial, instead of discharging the defendant, it should have ordered a new trial. Code Crim. Pro. § 543; People v. Phillips, 42 N. Y. 200. Therefore, to uphold the decision of the general term discharging the defendant, we must be able to see in this record some fundamental obstacle to his conviction for the crime charged in the indictment.

Kidnapping was an offense at common law, and consisted in the unlawful removal of a person from his own country or state against his will. 4 Black. Com. 219; 1 Russell on Crimes, 9th ed., 962; 1 Whart. C. L., 8th ed., § 590; 2 Bish. C. L., 7th ed., § 750. In the case of adult persons it is believed that at common law the crime of kidnapping was not complete until the person alleged to have been kidnapped was removed from his own country to another, and thus deprived of the benefit and assistance of the laws under whose protection he lived. But at a very early day in England statutes were passed extending the crime to other cases, and it is now defined by statutes, it is believed, in all the states of this country, and nowhere, as far as we can discover, would the acts of the defendant, as disclosed by the evidence in this case, constitute the common law or statutory offense of kidnapping.

Now what are the material facts of this case? Mrs. Baird, aged twenty-nine years, was a married daughter of the defendant, living with him separate from her husband. In August, 1890, the defendant, alleging that she was insane, went to the county judge and stated the case to him. He designated two competent and qualified physicians to examine her, and they went to the house of the defendant and examined her, and investigated her condition, and certified under oath that she was insane, and subsequently their certificate was approved by the judge. She knew of these proceedings, and knew that the physicians had adjudged her to be a lunatic, and that she was to be taken to the asylum. The defendant, having the certificate, took her in the day time to the lunatic asylum at Utica, and for that purpose he used no force or violence whatever. He be-

lieved that he had the right to take her, and she, believing that she was obliged to go, voluntarily went with him, without making any resistance or any effort to escape. She was delivered at the asylum and there remained for about three weeks, when she was discharged on the ground that she was not insane. The asylum physicians and attendants believed that she was not insane at any time while she was in the asylum. Upon the trial there was a controversy as to her sanity when the certificate of the physicians was made, and as to the motive of the defendant in taking her to the asylum, and as to his belief that she was really insane at the time. We will, for the purposes now in hand, although far from believing it, assume that she was not insane, and that the defendant knew it, and that he used the forms of law from improper and malicious motives, and yet we are of the opinion that he did not commit the crime of kidnapping.

As we have stated, under the common law these acts would not have constituted the crime of kidnapping, because Mrs. Baird was not removed from the state. The Revised Statutes defined the crime of kidnapping as follows: "Every person who shall without lawful authority forcibly seize and confine any other, or who shall inveigle or kidnap any other with intent either (1) to cause such other person to be secretly confined or imprisoned in this state against his will; or (2) to cause such other person to be sent out of this state against his will." 2 R. S. 664, § 28. And this section of the Revised Statutes, consisting of these subdivisions, was carried in to the Penal Code, and is there subdivision 1 of section 211, as follows: "A person who wilfully seizes, confines, inveigles or kidnaps another with intent to cause him, without authority of law, to be secretly confined or imprisoned within this state, or to be sent out of the state, or to be sold as a slave, or in any way held to service, or kept or detained against his will," is guilty of kidnapping. The Code provision was a mere revision of the provisions contained in the Revised Statutes, and we have no reason to suppose that it was intended to embrace within the definition of the crime acts before innocent. When the person seized or inveigled is not removed from the state    the intent must be secret confinement within the state. When the person is seized and removed in:

broad daylight over public highways and railroads in the presence and view of many people, and taken to a public asylum, where there are public officials, numerous physicians and other people, there certainly is no secrecy about the transaction, and it bears no resemblance to what has always been understood to be kidnapping.

In such a case there may be an assault and false imprisonment, but not the crime here charged. Such person has the protection of our laws and ample remedies against the wrong-doer, and the writ of habeas corpus is always available for his release. Suppose a public officer without authority of law publicly seizes a person in the street and takes him to the police station or jail, is he guilty of kidnapping? Suppose the defendant, inflamed by undue religious zeal, had his daughter taken by force and carried her to some church and compelled her to sit in a pew by his side during religious services, would he have been guilty of this crime? These questions must obviously be answered in the negative, and unless they can be answered in the affirmative the defendant's conviction upon the facts of this case cannot be maintained.

The first part of section 211 provides for all cases of kidnapping by seizure and confinement within the state. The latter part, after the words "within this state," relates to cases of removal of the person seized or inveigled from the state, and if a broader meaning be given to the latter part, then the fore part is useless and unnecessary. In construing the section, a purpose should be attributed to all the language used.

It is clear, therefore, that a new trial could not result in the conviction of the defendant, and hence he was properly discharged.

Many other questions are discussed in the learned and exhaustive briefs submitted to us, but we do not consider their determination at this time important.

The judgment should be affirmed.

All concur.