(123 So. 231)

### DOSS v. STATE.  (6 Div. 412.)

Supreme Court of Alabama.   June 27, 1929.

Charlie C. McCall, Atty. Gen., and Thos. E. Knight, Jr., Asst. Atty. Gen., for the State.

Horace C. Wilkinson, of Birmingham, opposed.

BROWN, J. The defendant was convicted of kidnapping, the offense denounced by section 3189 of the Code of 1923, which provides that "any person who forcibly or unlawfully confines, inveigles, or entices away another, *with the intent to cause him to be secretly confined, or imprisoned against his will,* or to be sent out of the state against his will, must, on conviction, be imprisoned in the penitentiary for not less than two nor more than ten years." (Italics supplied.)

In an opinion which evinces painstaking consideration, the Court of Appeals, construing the statute, has read into its first clause "and" for "or" so as to make it read "Any person who forcibly *and* unlawfully confines," etc. We are persuaded that this interpreta-

32

tion is unnecessary to characterize the acts prohibited as unlawful.

The dominating element of the offense of kidnapping, like the statutory felony of assault with intent to murder, is the intent with which the acts enumerated in the statute are done, to wit: "With the intent to cause him to be *secretly* confined or imprisoned against his will, or to be sent out of the state against his will," and the adverb "secretly" qualifies each of the verbs "confined" and "imprisoned," clearly indicating a legislative purpose to denounce as a felony any surreptitious restraint of one person by another in such sort as to deprive the subject of the crime "of the friendly assistance of the law to relieve himself from captivity." 1 Russ. Cr. 961; Smith v. State, 63 Wis. 453, 23 N. W. 879.

"Kidnapping at common law is defined to be the forcible abduction or stealing away of a man, woman or child from their own country and sending them into another," and is treated as an aggravated species of false imprisonment. 4 Black. Com. 219; 1 East P. C. 430. To abduct is "to take away surreptitiously by force;" to steal is "to accomplish by stealth and concealment." Webster's New Int. Dict.

In Smith v. State, supra, the court of Wisconsin, construing a statute similar to ours, observed: "Can it be possible that the Legislature of this state intended to punish simple false imprisonment the same as this high crime of kidnapping? And yet it must be so, if the first clause of the section defines a distinct and complete offense, unqualified by the intent thereinafter mentioned, which would make the crime kidnapping. * * * Secreting the prisoner, or carrying him out of the state, or in some way depriving him of the ordinary means of securing his liberty, or, as is said in Russell [1 Russell, 961], 'depriving him of the friendly assistance of the laws to redeem himself from such * * * captivity,' are the ingredients of the offense. * * * Without the aid of scarcely any decision of other courts upon the precise question here raised, but by what appears to be the most reasonable construction of the language, and by the analogies of the common law, and in consideration of the high grade and severe punishment of the crime of kidnapping, we conclude that the legislature intended that the *intent* mentioned in the section under consideration should qualify each preceding clause to which it can be made applicable, and that such intent must in all cases be * * * proved in order to a conviction for the offense defined in said section." A like ruling, construing a similar statute, was made in People v. Camp, 66 Hun, 531, 21 N. Y. S. 741, and affirmed by the Court of Appeals 139 N. Y. 87, 34 N. E. 755.

If authority, other than the statute, is deemed necessary to sustain the proposition that the forcible and secret imprisonment of one person by another is such sort that the person so confined may not invoke the friendly assistance of the laws to relieve himself from such confinement, it may be found in the provisions of the Constitution "that no person shall be accused or arrested, or detained, except in cases ascertained by law, and according to the form which the same has prescribed; and no person shall be punished but by virtue of a law established and promulgated prior to the offense and legally applied." Constitution 1901, § 7.

The first count of the indictment under which the verdict of guilty was returned by the jury is in the form prescribed by section 4556 of the Code, form 68, and, under the repeated ruling of this court, it is sufficient, although it "omits to aver" in terms some of the material facts necessary to be proved to secure a conviction. Schwartz v. State, 37 Ala. 460; Smith v. State, 63 Ala. 55; Whitehead v. State, 16 Ala. App. 427, 78 So. 467; Leonard v. State, 96 Ala. 108, 11 So. 307; Walker v. State, 96 Ala. 53, 11 So. 401; Lang v. State, 97 Ala. 41, 12 So. 183; Reeves v. State, 95 Ala. 31, 11 So. 158; Huffman v. State, 89 Ala. 33, 8 So. 28; Bailey v. State, 99 Ala. 145, 13 So. 566; Coleman v. State, 150 Ala. 64, 43 So. 715.

The case of Bryan v. State, 45 Ala. 86, cited by the appellant, and followed by the Court of Appeals, declared a different rule; but that case was overruled by Weed v. State, 55 Ala. 13; this was pointed out by the Court of Appeals in Whitehead v. State, 16 Ala. App. 427, 78 So. 467.

The third count of the indictment condemned in Henry (a Slave) v. State, 33 Ala. 389, was not in the form prescribed by the statute.

The defendant filed a plea in abatement, which, omitting the formal parts, avers "that the indictment returned against him in this case should be abated because the grand jury that returned said indictment was not drawn and impaneled as required by law, but to the contrary was what is commonly called 'stacked,' that is to say, the cards containing the names of the jurors in attendance on court that week were not placed in a hat or box and the names indiscriminately drawn therefrom, but to the contrary the names of the jurors attending court that week from which the grand jury was drawn which returned this indictment were all stacked up in one stack and the first eighteen names on the stack were selected by the judge presiding as the grand jury impaneled which returned the indictment in this case."

The state's demurrer to this plea, assigning the following grounds; "(1) Because the plea is no answer to the indictment; (2) because the plea presents no valid objection to the said indictment; (3) because the plea does not aver that the grand jury was not drawn by

officers required by law to draw same," was sustained.

In Oliveri v. State, 13 Ala. App. 348, 69 So. 359, it was ruled that the statute, Code 1923, § 9479, which provides that "no demurrer in pleading can be allowed but to matter of substance, which the party demurring specifies; and no objection can be taken or allowed which is not distinctly stated," was not applicable to criminal prosecutions, following in this respect the rule of James v. State, 53 Ala. 380, to the effect that, although the court might for that cause have refused to examine the pleas for defects therein, and have properly overruled the demurrer, yet, if the pleas are manifestly insufficient, and no answer to the indictment, and the court properly so decides, we will not reverse its judgment. This court seems to have entertained a different view in Turk v. State, 140 Ala. 112, 37 So. 234, and Coburn v. State, 151 Ala. 100, 44 So. 58, 15 Ann. Cas. 249.

But whether we apply the rule announced in the James Case, or the rule of the later cases treating the facts averred in the plea as true, as we must do on demurrer (Spivey et al. v. State, 172 Ala. 391, 56 So. 232) we are of opinion that the court erred in sustaining the demurrer, and in this respect the Court of Appeals has ruled correctly.

The jury law as embodied in the Code, regulating the drawing and formation of juries, originated in the Act of the Legislature approved August 31, 1909, Acts 1909 (Sp. Sess.) pp. 305–320, sections 18 and 32 of the act being amended by act approved September 29, 1919, Acts 1919, pp. 1039–1042.

In Zininam v. State, 186 Ala. 9, 65 So. 56, in construing and applying these statutes in respect to the declaration of the Legislature that the provisions thereof "relating to the selection, drawing, summoning, or impaneling of jurors [are] directory merely," it was observed: "Nevertheless it is clear on inescapable grounds that some of the provisions of the Act in respect to the selection, drawing, summoning, and impaneling juries are mandatory. * * * When the Legislature in this Act, along with its general prescription for interpretation, provided *specific regulations* which must have been deemed essential to the proper conduct of trials by jury, and which, if they are to have any operation at all, must be made effectual according to the specific language of the act, it so provided that either such specific regulations must be accepted by the courts as mandatory, or the statute as to them must be held to be insensible and of no effect." A like ruling was made in O'Byrnes v. State, 51 Ala. 25, as to a statute of similar import in respect to the formation of grand juries.

These statutes were subsequently carried forward into the present Code, c. 311, without change, and it must be presumed that the Legislature intended to adopt them with their previous interpretation. Barnewall v. Murrell, 108 Ala. 367, 18 So. 831; Spooney v. State, 217 Ala. 219, 115 So. 308.

Section 8616 of the Code provides for the drawing, in open court, of the names of jurors from the jury box, for the next session of the court. by one of the judges of such court, and that "there shall be no selection of names."

Section 8622, dealing with the *formation* of a grand jury and petit juries, after providing for the hearing of "excuses and claims of exemptions and disqualifications," provides that the court "shall cause the names of all the jurors in attendance upon the court on that day, and who have not been excused by the court, to be written on separate slips of paper, or cards and placed in a hat or box, *and thereupon the judge of the court must, in open court, draw from the hat or box, at terms requiring grand juries, the names of eighteen jurors who shall be empaneled and sworn as the grand jury for the term of the court*," etc. (Italics supplied.)

And section 8630 provides: "No objection to an indictment on any ground *going to the formation of the grand* jury which found the same can be taken to the indictment, except by plea in abatement to the indictment; and no objection can be taken to an indictment by plea in abatement except upon the ground that the grand jurors who found the indictment *were not drawn* by the officer designated by law to draw the same; and neither this objection, nor any other, can be taken to the *formation* of a special grand jury summoned by the direction of the court." (Italics supplied.)

There is no escape from the conclusion that the section last quoted preserves the right of one indicted to plead in abatement, the fact that the grand jurors were *not drawn* by the presiding judge from the hat or box in the *formation* of the grand jury, and that it refers to this drawing and not the drawing provided to make up the venire facias for summoning the. jurors by section 8616; and the statute places as much emphasis on the fact that the jurors must be drawn as it does on who shall do the drawing. The manifest purpose of these provisions is to avoid any imputation or suspicion that the members of the grand jury have been selected for any special case or to indict any special person, and to remove this important arm of the court, so essential to the administration of justice, from any suspicion of bias or prejudice. The Legislature, no doubt, deemed this much necessary to preserve the dignity of the court and "the sanctity and purity of the grand jury." O'Byrnes v. State, 51 Ala. 25.

This view is reinforced by the provisions of section 5202 of the Code 1923, which has a different field of operation. That section provides: "No objection can be taken to an indictment, by plea in abatement or otherwise,

on the ground that any member of the grand jury was not legally qualified, or that the grand jurors were not legally *drawn or summoned*, or on any other ground going to the formation of the grand jury, except that the jurors were not drawn *in the presence of the officers* designated by law," etc. [Italics supplied]. This section has been construed to relate to the drawing from the jury box in the formation of the venire facias for summoning the jurors. Spivey v. State, 172 Ala. 391, 56 So. 232; O'Byrnes v. State, supra.

■ These statutes are in pari materia constituting a system of law relating to the same subject, and, according to a well-recognized cannon of statutory construction, will be construed so as to give each a field of operation, for it cannot be assumed that the one or the other is meaningless. City of Birmingham v. Southern Express Co., 164 Ala. 529, 51 So. 159; Abingdon Mills v. Grogan, 167 Ala. 146, 52 So. 596; Meridian Life Ins. Co. v. Dean, 182 Ala. 127, 62 So. 90; State v. Montgomery, 177 Ala. 212, 59 So. 294; 25 R. C. L. 1060, § 285.

Section 8637 relates to minor errors in a venire, and is without influence on the question of the validity of an indictment returned by a grand jury not formed and impaneled as required by law. Zininam v. State, 186 Ala. 9, 65 So. 56; Spivey v. State, 172 Ala. 391, 56 So. 232; O'Byrnes v. State, 51 Ala. 25.

■ The court directed a verdict for the state through the affirmative charge requested in writing, and, after giving this charge, stated to the jury: "So, the question with you is whether or not you believe this evidence beyond a reasonable doubt. If you do, you will say we the jury find the defendant guilty of kidnapping as charged in the first count of the indictment." While the judges of the Court of Appeals all concur that the affirmative charge was erroneously given, they are not in agreement as to the reason therefor. The presiding judge states two reasons for his conclusion: First, the only evidence offered that in any way tended to connect the defendant with the offense was the testimony of the witnesses Tidwell and Hughes, and that the undisputed evidence shows that they were both accomplices and their testimony is not corroborated by "other evidence tending to connect the defendant with the commission of the offense." If this interpretation of the evidence is correct, the legal conclusion is undoubtedly sound. Code of 1923, § 5635. Whether or not there was evidence tending to corroborate an accomplice is one of law for the court, but whether it sufficiently corroborates the testimony of the accomplice to warrant a conviction is for the jury. Read v. State, 195 Ala. 671, 71 So. 96. Second, that "the evidence negatives * * * any intent to secretly confine Calloway, or to cause him to be sent out of the State against his will." The existence of such intent, as we have shown, is an essential element of the offense, and, if there was no evidence of such criminal intent, a conviction for kidnapping cannot be sustained. Toulet v. State, 100 Ala. 72, 14 So. 403.

■ The presiding judge was also of opinion that the evidence was insufficient to warrant the jury in finding that the defendant entertained the intent to secretly confine or imprison Calloway, and, for this reason, it was error for the court to refuse the affirmative charge requested by him. This view overlooks the fact that a charge of kidnapping embraces every element of false imprisonment —a misdemeanor under the common law. 19 Cyc. 376; 2 C. J. 571, § 187. And section 8697 of the Code authorizes a conviction for the misdemeanor, even though the evidence may be found insufficient to warrant a conviction for the felony. Hutto v. State, 169 Ala. 19, 53 So. 809; Smith v. State, 63 Wis. 453, 23 N. W. 879.

Section 5277 of the Code provides for the punishment for misdemeanor in respect to which there are no specific provisions. Code of 1923, § 5277; Hutto's Case, supra.

Such charge likewise embraces a common-law assault. Com. v. Cheney, 141 Mass. 102, 6 N. E. 724, 55 Am. Rep. 448; 11 R. C. L. 792, § 4.

Samford, J., was of opinion that the evidence was sufficient to carry the case to the jury on the question of the alleged intent to secretly confine or imprison the defendant against his will, and that this was a fact resting in inference, which it was the province of the jury to draw; and that whether or not the witness Hughes was an accomplice was for the jury.

The rule here applicable is illustrated by the following observations in Alabama Fertilizer Co. v. Reynolds & Lee, 79 Ala. 497: "The motive or intent with which an act is done, or refused to be done, frequently becomes a matter of pertinent inquiry in judicial administration. Before the enactment of our statutes making parties competent witnesses in their own behalf, there could be no direct proof of motive or intent, for no witness could have sufficient knowledge of another's mental operations to testify to them as "a fact." Hence, motive and intent were classed as inferential facts—facts to be inferred by the tribunal, from attendant facts in evidence. In this state, although differing from the rule declared in some * * * states, we refuse to allow parties, when testifying in their own causes, to give evidence of their own uncommunicated motives or intentions. We do this, because such testimony, in its nature, is insusceptible of contradiction. The result is that, with us, motive and intent remain as they were at common law

—inferences to be drawn from surrounding facts and circumstances." See, also, Fuller v. Whitlock, 99 Ala. 411, 13 So. 80; Love v. State, 16 Ala. App. 45, 75 So. 189; Brown v. State, 142 Ala. 287, 38 So. 268; Jackson v. State, 94 Ala. 89, 10 So. 509; Meridith v. State, 60 Ala. 441.

Rice, J., was of opinion that the question of whether or not the witness Hughes was an accomplice was in the light of the evidence a question for the jury, and for that reason the court invaded the province of the jury in giving the affirmative charge for the state.

■ The test of whether a witness is an accomplice. within the meaning of section 5635 of the Code 1923, is determined by the fact as to whether or not he could have been indicted and convicted of the offense charged, either as principal or accessory, and this depending upon the circumstances of the particular case may be a question of law for the court, or of fact for the jury. Ash v. State, 81 Ala. 76, 1 So. 558; Bass v. State, 37 Ala. 469; Horn v. State, 15 Ala. App. 213, 72 So. 768. These observations are sufficient to indicate that the differences of opinion between the Judges of the Court of Appeals are in respect to the findings of fact.

■ This court has steadfastly refused to review the Court of Appeals as to the findings of fact. Postal Telegraph-Cable Co. v. Minderhout, 195 Ala. 420, 71 So. 91. Still we deem it proper to state the rules of law applicable to these several phases of the case, in view of the trial to follow the reversal of the judgment of conviction.

Writ denied.

All the Justices concur.