JULIET JACOBSON v. MINNIE SORENSON AND ANOTHER.[1]

May 22, 1931.

No. 28,457.

[1]Reported in 236 N. W. 922.

426

R. M. *Saltness*, for appellant.
*Fosnes & Rolloff*, for respondents.

LORING, J.

Plaintiff recovered a verdict against both defendants in an action for assault, false imprisonment, and kidnaping. The trial court granted a new trial to Minnie Sorenson and judgment notwithstanding the verdict to S. S. Sorenson. Plaintiff has appealed from both orders; but, inasmuch as the order granting a new trial is not appealable, we are concerned only with the order for judgment. In determining whether or not that order should be sustained we must examine the record to find if there is evidence supporting a cause of action within the issues defined by the pleadings. Plaintiff is entitled to a construction of the testimony most favorable to her, and consequently it will be necessary to go into the facts in some detail.

The defendants are husband and wife. At the time of the alleged assault and restraint S. S. Sorenson was manager of a creamery at Dawson and among others employed the plaintiff and her brother in the creamery. Plaintiff was 21 years of age at the time of the trial. She and another girl worked in the office. Her duties included bookkeeping. Her brother and other young men were employed in the operating department.

The defendant Minnie Sorenson was not in good health and suffered from deafness, which she corrected by the use of a mechanical appliance so that a person near her could speak to her in an ordinary tone of voice. She disliked the plaintiff and "was suspicious

of her." Evidently Mrs. Sorenson did not approve of the prevailing mode in young women's apparel and suspected that lack of what she deemed adequate attire was exposing too much feminine charm to the eyes of her husband, in whose ability or disposition to resist such attraction she seems to have had little confidence. On the morning of August 19, 1929, she accompanied her husband to the creamery and sat outside in the rear seat of their Buick sedan with the curtains drawn. At about eight o'clock, when the plaintiff approached the office with the mail, the defendant Minnie opened the car door and called plaintiff and insisted on her getting into the rear seat with her. Defendant Minnie then charged plaintiff with ruining homes; that she was a home-wrecker; that she had wrecked the Sorenson home, in which they could have been happy in their old age. To this the plaintiff responded that she had driven Sorenson away from her desk. Thereupon defendant Minnie said: "I want Sorenson to hear that," and blew the horn. In response to this signal Sorenson came out to the car. Defendant Minnie then pulled up plaintiff's dress to see what else she had on and, being dissatisfied, remarked: "What right have you got to come to the creamery with those things on? Mr. Sorenson can't stand it, what right have you? What right have you to wear those things— a sleeveless dress?" In the course of this castigation she struck plaintiff on the leg and slapped her face, but as Sorenson got into the car he instructed defendant Minnie not to strike plaintiff. Then plaintiff opened the door to get out, but defendant Minnie grabbed her arm and Sorenson slammed the door and she was kept in the car. Defendant Minnie directed Sorenson to "drive out in the country as you promised." They then drove out of town and parked near a railroad track, where defendant Minnie continued her excoriation of the plaintiff and this time included her husband, who admitted that plaintiff had driven him away from her desk and whose only recourse seems to have been in tears and a prayer for forgiveness.

In the course of the tirade defendant Minnie announced to the plaintiff that she could not work at the creamery another day and

that she would make it her business to inform the wife of plaintiff's next employer that plaintiff "tempted men." She also announced a "notion to pull every hair out of your head." They drove back to the creamery, and defendant Minnie demanded plaintiff's check of her husband.

It appears that plaintiff's brother saw enough of the defendant's actions in keeping plaintiff in the car to excite his alarm, and he went somewhere to a telephone and sent another sister after their father, who arrived at the creamery prior to the return of the parties. He asked what was wrong, to which defendant Minnie responded that they were not going to have any "fuss" or "rumpus" in the office. The foregoing is a summary of plaintiff's evidence.

It was defendant Minnie's contention that she took plaintiff, whom she admitted she disliked and suspected, for the ride to give her a little motherly advice, and Sorenson claimed that he merely told her that her services with the creamery were at an end and that they went only a couple of blocks and were not gone over ten minutes. However that may be, the plaintiff's father had time to arrive at the creamery in advance of them, heard defendant Minnie's remark about a "fuss" or "rumpus," and saw Sorenson make out the check his wife demanded. This is undisputed.

From this statement it will be seen that according to plaintiff's testimony Sorenson participated in the restraint that was put upon plaintiff when she sought to leave the car and in taking her for the involuntary ride afterwards, and that the order for judgment was erroneous unless plaintiff's testimony was so inherently improbable that it should be disregarded as a matter of law. We do not so regard it. It found support not only in its own probability but in some of defendant's testimony and in circumstances that were undisputed.

The trial court submitted the case on the theory of assault alone, disregarding almost entirely the tort involved in the restraint of plaintiff's person, which, if the jury believed her, as evidently it did, amounted to false imprisonment and to the forcible carrying away usually termed kidnaping.

The order appealed from is reversed.