# STATE v. RAYMOND CROATT AND ANOTHER.[1]

November 26, 1948.

No. 34,680.

*R. M. Saltness* and *Ernest F. Jacobson,* for appellants.

*J. A. A. Burnquist,* Attorney General, *Ralph A. Stone,* Assistant Attorney General, and *H. W. Swenson,* County Attorney, for the State.

KNUTSON, JUSTICE.

Defendants were tried and convicted of the crime of assault in the second degree, based upon an indictment returned by the grand jury which reads as follows:

"The said Raymond Croatt and Edwin John Croatt, and each of them, on the 9th day of January, 1947, at the city of Madison, in this county, did wilfully, wrongfully, unlawfully and feloniously assault one Loren Hendrickson with intent then and there had by said Raymond Croatt and Edwin John Croatt, and each of them to wilfully,

---

[1]Reported in 34 N. W. (2d) 716.

unlawfully and feloniously seize and confine said Loren Hendrickson with intent to cause him, without authority of law, to be kept and detained against his will, * * *."

A motion for a new trial having been denied, defendants appeal jointly from the order denying their motion and from the judgment entered against them.

In order to sustain the conviction, it must appear that an assault had been committed by defendants with an intent to commit a felony under M. S. A. 619.38, the pertinent portion of which reads as follows:

"Every person who, * * *

* * * * *

"(5) Shall assault another with intent to commit a felony, * * *

"Shall be guilty of an assault in the second degree, * * *."

Defendants contend that the above indictment charges only the commission of an assault in the third degree and that they have been improperly tried and convicted of assault in the second degree. This contention is based upon the claim that the indictment fails to charge the commission of an assault with intent to commit a felony. The felony which the indictment seeks to charge is that of kidnapping. Defendants contend that there are only two ways in which the crime of kidnapping can be committed, namely, (1) by secretly confining or imprisoning a person within the state; or (2) by sending the person out of the state. Our statute defining the crime of kidnapping is § 619.34, which so far as here material reads:

"Every person who shall wilfully:

"(1) Seize, confine, or inveigle another, with intent to cause him, without authority of law, to be secretly confined or imprisoned within the state, or sent out of it, to be sold as a slave, or in any way held to service, or kept or detained against his will;

* * * * *

"Shall be guilty of kidnapping * * *."

It is the claim of defendants that the phrase "or detained against his will" must be read in connection with the portion of the kid-

napping statute having reference to transporting a person out of the state.

The testimony in the case discloses the following facts: A short time prior to January 9, 1947, defendant Raymond Croatt had parked his car on one of the streets in Madison, Minnesota. When he came to go home he found the keys missing and had to leave the car. Information he received from a friend led him to believe that one Loren Hendrickson had his automobile keys. On the evening of January 9, 1947, between eight and nine o'clock, defendants were in the Happy Hour tavern, a poolroom in Madison. Loren Hendrickson was also there, playing pool. Raymond Croatt spoke to Hendrickson about getting his keys, but received no answer. Hendrickson walked away from him, and Raymond later again questioned Hendrickson about his keys and again received no answer. When Hendrickson had finished his game of pool, he walked to the rear of the room, and Raymond then grabbed him by the collar and, with the help of his brother, defendant Edwin John Croatt, forced him out the rear door, where an altercation ensued. One of the proprietors of the Happy Hour went to investigate and found Hendrickson on the ground, or partly lying down, with someone standing over him. He informed the boys that they could not fight on his premises, and thereupon pushed one of the defendants away from Hendrickson. Upon gaining his freedom, Hendrickson ran away. He was pursued by Edwin, who caught him some distance away, and was joined by Raymond. Hendrickson was again asked about Raymond's keys, and when he denied having them Raymond slapped his face. Defendants then, each holding one of Hendrickson's arms, led him some distance away, slapping his face when he denied having the keys. Three other acquaintances, Edmund Henrich, Eugene Kemen, and Elvin Olson, having seen the original altercation, followed in Henrich's car and intercepted defendants in the act of leading Hendrickson. Hendrickson was pushed into the Henrich car by defendants. He sat in the back seat with three of the boys, including defendant Edwin Croatt. Raymond sat in the front seat with the driver. Thereupon, they drove the car approximately one-half mile out of town and stopped

on a side road. On the way out, Raymond kept demanding his keys of Hendrickson and slapping him when he denied having them. When the car was stopped, Hendrickson was forced out of the car, and he, together with Raymond, fell into the snow in the ditch. Raymond kept slapping Hendrickson while in the ditch. Hendrickson later broke away and ran, and the others thereupon returned to town without him.

The next morning Hendrickson was seen by his parents at about 4:30 or 5 a. m. His face was black and blue, and his eyes were bruised. He returned to work on January 10 and continued to work until February 11. On February 15 he died. He had made no complaint to the sheriff or to anyone so far as appears from the record. An investigation into the cause of his death disclosed the assault, and thereafter defendants were indicted by the grand jury on a charge of assault in the second degree. The evidence does not connect the death of Hendrickson with the assault, but evidence of his death was admitted only for the purpose of explaining his absence from the trial, and the jury were so instructed by the court.

■ At common law, kidnapping was defined as "the forcible abduction or stealing of a man, woman, or child from his own country and sending of him into another." It was treated as an aggravated form of false imprisonment. The aggravation consisted in carrying the imprisoned person out of his own country and beyond its protection. 4 Blackstone, Comm. 219; 1 Wharton, Criminal Law (12 ed.) § 773; Black, Law Dictionary (3 ed.) 1055; 31 Am. Jur., Kidnapping, § 2; 51 C. J. S., Kidnapping, § 1; Annotation, 68 A. L. R. 719.

The common-law definition has now been modified in this country by statutes which vary in the several states. The elements of the crime necessarily are dependent upon the wording of the statute in the particular state under consideration, and authorities cited from other states must be read in connection with the statute of that particular state.

It seems clear that our statute, from the earliest time, has combined, under one section, the crime of false imprisonment and the

old common-law crime of kidnapping. Even under the common law, the crime of kidnapping included all the elements of false imprisonment. Doss v. State, 220 Ala. 30, 123 So. 231, 68 A. L. R. 712; 31 Am. Jur., Kidnapping, § 2. The difference under the common law was that kidnapping also required the aggravation of having the imprisoned person removed from his country.

That the two offenses are combined, even in our territorial laws, is clearly shown by our statutes. R. S. 1851, c. 100, § 42, contains the definition of the crime of kidnapping under our territorial law. This section became § 42 of c. 94 of G. S. 1866, with minor changes in phraseology, but no essential change in context. In G. S. 1866, the section is labeled in the margin "False imprisonment, and kidnapping, how punished." This section was carried verbatim into G. S. 1878, c. 94, § 52. The title of the section there, instead of appearing in the margin, appears at the heading of the section and reads: "False imprisonment, and kidnapping."

By § 182 of c. 4 of the Penal Code (found in G. S. 1878, Vol. 2 [1888 Supp.], at p. 976), the language was somewhat changed, and, so far as here pertinent, reads:

"A person who willfully

"1. Seizes, confines, inveigles, or kidnaps another, with intent to cause him, without authority of law, to be secretly confined or imprisoned within this state, or to be sent out of the state, or to be sold as a slave, or in any way held to service, or kept or detained against his will; * * *

\* \* \* \* \*

"Is guilty of kidnaping, * * *."

The same language is found in G. S. 1894, § 6467. In R. L. 1905, we find some change in phraseology, but no indication that it was the intention of the legislature to change the meaning of the statute. R. L. 1905, § 4900, subd. 1, is identical with our present statute, M. S. A. 619.34(1). The only change in R. L. 1905 from the prior G. S. 1894 is that the words "or kidnaps" following the word "inveigles" were deleted and the word "or" following the phrase "to be sent out of the state" was omitted.

■ The question here presented has not heretofore come directly before us. Our statute was considered in State v. Newman, 127 Minn. 445, 149 N. W. 945, but in that case the court had no difficulty in finding that defendant had secretly confined or imprisoned another within the state. The same might well have been true in the instant case had the indictment so alleged, but in the absence of an allegation of secrecy we must determine whether secrecy is an essential element of the crime where the confinement or imprisonment is within the state.

The case of Jacobson v. Sorenson, 183 Minn. 425, 236 N. W. 922, was a civil action for damages for assault, false imprisonment, and kidnapping. While the case is of little help in determining the questions now before us, the following language of the court is enlightening (183 Minn. 428, 236 N. W. 924) :

"The trial court submitted the case on the theory of assault alone, disregarding almost entirely the tort involved in the restraint of plaintiff's person, which, if the jury believed her, as evidently it did, amounted to false imprisonment and to the forcible carrying away usually termed kidnaping."

Other states having statutes similar to ours have considered questions somewhat analogous to this. The cases most strongly relied upon by defendants are Smith v. State, 63 Wis. 453, 23 N. W. 879, and People v. Camp, 139 N. Y. 87, 34 N. E. 755. In both of these cases the statute involved was substantially the same as ours. The court in both cases came to the conclusion that in order to consummate the crime of kidnapping the person must either be "secretly" confined or taken out of the state. The Wisconsin court held that because of the severity of the punishment the legislature could not have intended to include the crime of false imprisonment. The court there said (63 Wis. 458, 23 N. W. 882) :

"* * * The marginal title of the section in all the revisions of the statute from and including that of 1839 is kidnaping, and by this name it is found in the index."

That is not true of our statute. Our statute was originally designated as "False imprisonment, and kidnapping, how punished," indicating that the legislature intended to include both crimes within the statute.

The case of In re McDonald, 50 Mont. 348, 146 P. 942, arose under a statute similar to ours. The Montana statute was practically identical with our statute prior to the 1905 revision. Much the same contentions were urged as are urged here. The Montana court said (50 Mont. 351, 146 P. 943):

"* * * If we apply the ordinary rules of grammar to an analysis of this statute, which is always the first resort in the process of interpretation (Jay v. School Dist. No. 1, 24 Mont. 219, 61 Pac. 250; Endlich on Interpretation of Statutes, sec. 4), we find that it includes these acts as offenses: To seize, *etc.*, another with intent to cause him, without authority of law: (1) To be secretly confined or imprisoned within this state; (2) to be sent out of the state; or (3) to be in any way held to service or kept or detained against his will, or, in case the person is a minor or under guardianship, against the will of the parent or guardian. That the word 'secretly' does not modify the words 'kept or detained' is entirely clear when we note that the clause 'to be secretly confined or imprisoned within this state' is made coordinate with each of the following by the use of the disjunctive 'or,' and that all of them are complete within themselves, without the interpolation of any word whatsoever. If the word 'secretly' is to be understood as modifying this clause, for the same reason it must also be understood as modifying the clause 'to be sent out of the state,' whereas the element of secrecy has never been regarded as a concomitant of the act denounced as an offense by this clause, when the act is accompanied by unlawful violence and the necessary intent; for no intelligent person, upon reading the statute, could escape the conclusion that if one person should seize another without authority of law with the intent to cause him to be sent out of the state, that act would come within the provision of the statute, whether it should be done secretly or openly."

The same reasoning applies to the contention of defendants that the phrase "kept or detained against his will" must be read in connection with the phrase "or sent out of it."

The case of State v. Autheman, 47 Idaho 328, 274 P. 805, 62 A. L. R. 195, involved the construction of a statute similar to ours. The pertinent portion of Idaho Compiled Statutes, 1919, § 8224, reads:

"Every person who wilfully:

"1. Seizes, confines, inveigles or kidnaps another, with intent to cause him, without authority of law, to be secretly confined or imprisoned within this state, or to be sent out of this state, or in any way held to service or kept or detained against his will; * * *

* * * * *

"* * * is guilty of kidnapping."

The Idaho court held (47 Idaho 335, 274 P. 808):

"* * * If appellant got upon the car and forced the boy to drive him to such place or places as he desired, as a matter of law, his acts constituted the seizure of another 'with intent to cause him, without authority of law, * * * to be held to service or kept or detained against his will,' and constituted the felony of kidnapping."

The case of State v. Taylor, 70 N. D. 201, 293 N. W. 219, is similar in all respects to that here involved. In that case, the defendant forced his way into a car occupied and about to be driven away by one Mrs. J. He ordered her to drive out to the highway. Before they could drive any distance, he was subdued and removed from the car by another party who realized something was wrong. He was charged by information with having committed the crime of kidnapping. The North Dakota statute is practically identical with ours prior to the 1905 revision. Substantially the same contentions were urged in the North Dakota court as are presented here. The North Dakota court said (70 N. D. 208, 293 N. W. 223):

"The essential elements * * * required * * * to find one guilty of kidnapping, are that a 'person * * * wilfully * * * kidnaps another, with intent to cause him, without authority of law, to be * * * detained against his will.' * * *.

"The term 'secretly,' as used in this subdivision hereinbefore quoted, refers to the words 'confined or imprisoned within this state.' The word does not apply to the subsequent clause, 'detained against his will.'

\* \* \* \* \*

"The gist of kidnapping is the intentional taking a person and compelling him to be detained against his will."

It is questionable whether either People v. Camp, 139 N. Y. 87, 34 N. E. 755, or Smith v. State, 63 Wis. 453, 23 N. W. 879, *supra,* considered the precise question we have before us here. In neither case was it contended that the last provision of the statute had reference to a removal outside of the state. The contention in both cases was that unless the removal was without the state the detention must be secret. If, however, the court did consider the questions here involved, we decline to follow those cases. It is evident that under our statute each clause of the statute is separated by the disjunctive "or," and each clause is separated from the other by a comma and is complete in itself. The statute has the same meaning as if it read:

"Every person who shall wilfully:

"(1) Seize, confine, or inveigle another, with intent to cause him, without authority of law: (1) to be secretly confined or imprisoned within the state; (2) sent out of it; (3) sold as a slave; (4) in any way held to service; (5) kept or detained against his will;

\* \* \* \* \*

"Shall be guilty of kidnapping \* \* \*."

If, as defendants contend, the words "kept or detained against his will" must be read in connection with the words "sent out of it," it is hardly likely that the legislature would have separated the various clauses of the statute not only by the disjunctive "or," but also by a comma.

We believe that the indictment involved herein sets forth an assault with intent to commit the felony of kidnapping, and, as such, the conviction of the defendants must be affirmed.

Affirmed.