38 So.2d 341

### SMITH v. STATE.
#### 5 Div. 253.

Court of Appeals of Alabama.
May 25, 1948.

Rehearing Denied June 29, 1948.

46

Jacob A. Walker and R. C. Smith, both of Opelika, for appellant.

A. A. Carmichael, Atty. Gen., and Thos. F. Parker, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This appellant was indicted for carnally knowing, or abusing in the attempt to carnally know, a girl under the age of twelve years, a statutory offense denounced by Section 398, Title 14, Code of Alabama 1940.

The appellant was about twenty years of age at the time of this alleged offense, and had just recently been honorably discharged from the Navy.

In the jury trial below the court instructed the jury, among other things, that included in the charge of carnal knowledge was the offense of assault with intent to rape, and further instructed them as to the form of their verdict should they find the defendant guilty of assault with intent to rape.

The defendant reserved and exception to the court's instruction pertaining to the verdict for assault with intent to rape.

The jury's verdict found the defendant guilty of assault with intent to rape.

The evidence introduced by the state tended to show that the little girl around whom this case centers was about six years of age. Her father operated a ferris wheel which was part of a carnival operating in Opelika at the time of this alleged occurrence.

- The defendant took this little girl into a secluded part of one of the carnival's concessions. There, according to this child, he laid her down, took her panties off, and "put his thing down there."

Injury to the child's genitals was shown by medical testimony.

The proprietress of the carnival observed the recumbent child, and saw the defendant near by pulling up his trousers. She told the child to run, and then hit the defendant. At about this same time she summoned other nearby men to her assistance and the defendant was taken into custody.

The defendant, testifying in his own behalf, claimed not to have been conscious of any of his conduct on this occasion, nor to remember any of it, because of the consumption by him of a large quantity of gin.

Several character witnesses also testified in defendant's behalf.

The defendant timely filed a verified plea in abatement. This plea, with its amendments contained, among other grounds, the following:

"3. The grand jurors who found the indictment were not drawn from the jury box by the officers designated by law to draw the same."

"10. The grand jury was drawn from the jury box in the vault of the Circuit Clerk's office while the clerk of the court was not present and while only the judge and the sheriff of Lee County were present; and as the judge drew the card containing each name from the jury box, he called the name of the prospective juror to the sheriff of Lee County and the Sheriff made a statement as to said juror and thereupon the judge either retained the said juror's card as a member of the panel from which the grand jury in this case was formed or dropped the same back in the box."

"13. The grand jurors who found the indictment were not drawn from the jury box by the officer designated by law to draw the same but were in fact selected by the sheriff of Lee County, Alabama, in that while a judge of this circuit drew from the jury box the names of said jurors he immediately submitted the same to the approval of the sheriff of this county, and if the sheriff approved the same, they were accepted on the panel, and if he disapproved the persons drawn, their names were dropped back in the box and they were not

placed on the panel from which the grand jury in this case was drawn."

"15. The charge against the defendant in this case is a felony and to try him on the indictment in this case would deprive him of the rights guaranteed to him under Section 6 of Article I of the Constitution of Alabama, 1901, in that he would thereby be deprived of life, or liberty without due process of law in that no indictment has been returned in this case conforming to due process."

The State demurred to the plea in abatement. The material grounds of this demurrer are that the plea does not allege or show that the grand jury was not drawn in the presence of the officers designated by law to draw same; does not show that the grand jury was not drawn as prescribed by law; the plea does not set up any lawful objection to the indictment; and does not allege any facts showing that the defendant has been, or would be deprived of life or liberty without due process of law.

The court sustained the demurrer. We must therefore for pleading purposes treat the facts averred in the plea as true. Spivey v. State, 172 Ala. 391, 56 So. 232; Doss v. State, 220 Ala. 30, 123 So. 231, 68 A.L.R. 712.

The above plea in abatement attacks the validity of the venire facias juratores, or general venire out of which the grand and petit juries are formed. The provisions for the drawing of such general venires are found in Section 30, Title 30, Code of Alabama 1940, and are as follows:

"At any session of a court requiring jurors for the next session, the judge, or where there are more than one, then any one of the judges of the court shall draw from the jury box in open court the names of not less than fifty persons to supply the grand jury for such session and petit juries for the first week of such session of the court, or if a grand jury is not needed for the session at least thirty persons, and as many more persons as may be needed for jury service in courts having more than one division for the first week, *and after each name is drawn it shall not be returned to the jury box, and there shall be no selection of names,* and must seal up the names thus drawn, and retain possession thereof, without disclosing who are drawn until twenty days before the first day of the session of the court for which the jurors are to serve, when he shall forward these names by mail, or express, or hand the same to the clerk of the court who shall thereupon open the package, make a list of the names drawn, showing the day on which the jurors shall appear and in what court they shall serve, and entering opposite every name the occupation of the person, his place of business, and of residence, and issue a venire containing said names and information to the sheriff who shall forthwith summon the persons named thereon to appear and serve as jurors." (Italics ours.)

Section 38, Title 30, Code of Alabama 1940, provides for the impanelling, organization, and formation of grand juries and petit juries from the names of all jurors in attendance upon court and not excused, by drawing in open court from a hat or box the names of such jurors written on separate slips of paper or cards. Thus the grand and petit juries are *formed* from the general venire jurors in attendance by virtue of the writ of venire facias juratores, issued pursuant to Section 30, supra.

Construction of Sections 30 and 38, supra, must be made in the light of two other Code sections with which they are respectively interrelated, namely, Sections 278 and 285 of Title 15, Code of Alabama 1940, which are as follows:

"278. No objection to an indictment on any ground going to the formation of the grand jury which found the same can be taken to the indictment, except by plea in abatement to the indictment; and no objection can be taken to an indictment by plea in abatement except upon the ground that the grand jurors who found the indictment were not drawn by the officer designated by law to draw the same; and neither this objection, nor any other, can be taken to the formation of a special grand jury summoned by the direction of the court."

"285. No objection can be taken to an indictment, by plea in abatement or otherwise, on the ground that any member of the

grand jury was not legally qualified, or that the grand jurors were not legally drawn or summoned, or on any other ground going to the formation of the grand jury, except that the jurors were not drawn in the presence of the officers designated by law; and neither this objection nor any other can be taken to the formation of a special grand jury summoned by the direction of the court."

■■ It is now clearly established that Section 278, supra, relates to Section 38, Title 30, supra, and preserves the right to plead in abatement the fact that the grand jurors were not drawn from the hat or box as provided in that section, and Section 285, supra, is articulated with and refers to Section 30, Title 30, supra, providing for the creation of the general venire. Doss v. State, 220 Ala. 30, 123 So. 231, 68 A.L.R. 712; Spivey v. State, 172 Ala. 391, 56 So. 232.

■ While it is specifically provided that the statutory provisions for the selection, drawing, summoning, or impanelling of jurors are directory merely, and not mandatory (See Sec. 45, Title 30, Code of Alabama 1940), this general prescription for interpretation cannot be used to nullify specific regulations deemed essential to the established concept of trial by jury. Zininam v. State, 186 Ala. 9, 65 So. 56. Certainly liberality of construction was never intended to conflict with the basic principles of due process. The provisions found in Section 30, Title 30, supra, that the judge of the court "shall *draw* from the jury box in open court the names," and that "after each name is drawn it shall not be returned to the jury box, and there shall be no selection of names," tending as they do to preserve precious essentials of the right of trial by jury, must be construed as mandatory.

Since the enactment of Sections 278 and 285, and their progenitors, it has been the uniform ruling as to objections to indictments to disallow all defenses, save that resting on irregularity in drawing and impanelling grand juries, and that is the statutory ground that the jurors were not drawn in the presence of the officers designated by law. Spivey v. State, 172 Ala.

391, 56 So. 232; Linehan's Case [Linehan v. State], 113 Ala. 70, 79, 21 So. 497, 500.

The objection to an indictment because of a defect in the grand jury returning it, is by the very terms of Section 285 saved where the jurors "were not drawn in the presence of the officers designated by law." Thus, the jurors must be: 1, drawn, i. e. as distinguished from selected, and 2, in the presence of the officers designated.

Nothing in Section 285, supra, relieves the designated officers from drawing the grand jury from the box, and a venire cannot be legally made up in any other way. Tucker v. State, 152 Ala. 1, 44 So. 587; Cochran v. State, 89 Ala. 40, 8 So. 78.

■ We therefore conclude that under the facts set forth in the plea in abatement, which, from the standpoint of pleading, we must consider as true in light of the demurrer, negatives the legal existence of the grand jury returning this indictment, in that it was not formed from a general venire of jurors drawn according to law.

The grand jury returning this purported indictment was, so far as established by the pleading, without legal warrant. O'Byrnes v. State, 51 Ala. 25; Fryer v. State, 146 Ala. 4, 41 So. 172; Osborn v. State, 154 Ala. 44, 45 So. 666; Spivey v. State, supra.

In view of what has been written above we are clear to the conclusion that the lower court erred in sustaining the demurrer to the defendant's plea in abatement.

■ It is further our opinion that the lower court erred instructing the jury that among the verdicts it could render was one of guilty of assault with intent to rape, on the theory that assault with intent to rape was included in the charge of carnal knowledge, and as a corollary, the lower court erred in refusing defendant's requested written charge No. 23 to the affect that if the jury believed the evidence they could not find the defendant guilty of assault with intent to rape.

At one time it was apparently the doctrine of the English cases that, regardless of the age of the girl, it was not a rape if the sexual intercourse was had with the female's consent. To correct this unwholesome result Parliament enacted statutes making sexual intercourse with girls under

a specified age a crime regardless of the consent of the female child. These statutes are the progenitors of the carnal knowledge statutes.

In this country these statutes, while aiming at the same evil, differ materially in their verbiage.

Our statutes denounce carnal knowledge of a girl, or abusing such girl in the attempt to have carnal knowledge of her. If the girl so mistreated is under twelve the punishment is death, or imprisonment in the penitentiary for not less than ten years. If the girl is over twelve and under sixteen years of age the punishment is imprisonment in the penitentiary for not less than two, nor more than ten years. See Sections 398, and 399, Title 14, Code of Alabama 1940.

■ Clearly, no different degrees of the offense of carnal knowledge are created by the above sections. Hutto v. State, 169 Ala. 19, 53 So. 809. The remaining question then is whether assault with intent to rape is necessarily a lesser included offense of the charge of carnal knowledge, so as to bring into operation the provisions of Section 323, Title 15, Code of Alabama 1940.

While there are some decisions from other states holding that assault with intent to rape is included in the offense of carnal knowledge as created by the statutes of those states, these decisions lose much of their persuasive character because of the difference in the wording of the statutes being construed as compared with our statute.

The alternative offense created by our statute by the words "or abuse in the attempt to carnally know" contribute an unusual facet to our statute.

■ The offense of assault with intent to rape includes all of the elements of rape except consummation of the sexual act. Morris v. State, 32 Ala.App. 278, 25 So.2d 54. These elements are an intent to have intercourse with a woman by force or fear, and against her consent.

■ On the other hand, under our carnal statute one is guilty if the genital organs of a child are injured in the attempt to carnally know her. The breadth of our statute protects females of tender years regardless of specific intent on the part of an accused to carry forward by force the sexual act to completion, and regardless of consent or non consent of the child. Dawkins v. State, 58 Ala. 376, 29 Am.Rep. 754; Castleberry v. State, 135 Ala. 24, 33 So. 431.

In the Dawkins case, supra, the indictment charged carnal knowledge, as does the indictment in the instant case. The trial court orally charged the jury that the word "abuse" was not synonymous with "injure," but meant "to forcibly use wrongfully."

In reversing the case because of the above oral instruction, Brickell, C. J., wrote:

"An injury to these parts, in the attempt at carnal knowledge is the 'abuse' to which the statute refers and not to forcible or wrongful ill usage, which would be an element of the offense of assault with intent to ravish the child. * * * The instruction given by the Circuit Court would render the attempt to know carnally and abuse the child the equivalent of an assault with intent to ravish, *a distinct offense, subject to different punishment under another statute.* Rape and its kindred offenses are the subject of several different statutory provisions, and the punishment for each is distinctly described. No one of these embraces the offense included in another. The result is that the instruction of the Circuit Court is erroneous, and the judgment must be reversed, and the cause remanded." (Italics ours).

In Toulet v. State, 100 Ala. 72, 14 So. 403, the indictment contained three counts, the first two charging assault with intent to rape, and the third charging carnal knowledge. In the course of this opinion in this case, Stone, C. J., drew a sharp distinction between the offenses of assault with intent to rape, and carnal knowledge, as indicated by the following quotations from his opinion:

"We may be pardoned for saying, in passing, that, when the indictment is under this section of the Code (the carnal knowledge statute, now Title 14, Sec. 398), neither violence used or threatened, nor the consent of the female, vel non, is a material ingredient of the offense. A child under ten

years of age is incapable of giving consent, as this section clearly treats the subject.

\*　　\*　　\*　　\*　　\*　　\*

"Although a child under 10 years of age is incapable of giving her consent to cohabitation, and, as a consequence, any cohabitation or attempted cohabitation with such child must be treated as if it were perpetrated or attempted without her legal consent, *yet we do not think it was the intention of the law-making power to constitute the same a rape,* in the absence of force or violence in the act done, or attempt made. In other words, if the act done or attempted be not against the consent,—that is, be not accomplished, or attempted against consent, and with violence, actual or constructive,—then the case falls within section 3739 of the Code (the carnal knowledge statute, now Title 14, Sec. 398), and must be governed by its provisions. *It is not an assault with intent to commit a rape, under section 3751 of the Code.* (Now Title 14, Sec. 38). Our statute, section 3739 of the Code (the carnal knowledge statute), was evidently intended to take the place and cover the ground of English statutes which have long been in force, and have been many times construed. It has been uniformly held that if the girl consents, even though she be under ten years of age, the act is not a rape.

\*　　\*　　\*　　\*　　\*　　\*

"There can be no question if the testimony of the little girl, Mamie Riley, be believed, that the defendant committed an assault upon her. Taking her by the hand and leading her into the woods, laying her down, etc., constituted an assault. The attendant circumstances must determine its aggravation, or the contrary. The graver inquiry is, had he the intent to commit a rape upon her, and was there any evidence of such intent? 'Without force, actual or constructive, there can be no rape. It must be shown that the prisoner intended to gratify his passion in all events, and notwithstanding the utmost resistance on the part of the woman.'" (Italics ours).

The opinion on the rehearing in the fairly recent case of Hull v. State, 232 Ala. 281, 167 So. 553, 554, dealt solely with the question of the correctness of the action of the lower court in excluding from the court room during the trial all persons except court officials.

In holding such act erroneous the Supreme Court, per curiam, held:

"This defendant was indicted and tried under section 5410 [Code 1940, Tit. 14, § 398] for having 'carnal knowledge of any girl under twelve years of age.' It may be true that this may be a kindred offense with rape, but this court in this case of Toulet v. State, 100 Ala. 72, 14 So. 403, held that the offense here involved did not constitute rape and we must assume that the framers of the Constitution of 1901, when adopting section 169 had full knowledge with the holding in the Toulet Case, supra, and did not intend thereby to include any offenses save 'rape and assault with intent to ravish.'"

The strongly inferred doctrine of the above cases establishes that assault with intent to rape is a separate and distinct offense from our statutory offense of carnal knowledge, and cannot be said to be necessarily included in the latter offense.

In instructing the jury as to the verdicts it could render, the trial court stated to the jury that the penalty for violation of Section 398 of Title 14, Code of Alabama 1940, under which section this accused was being prosecuted, was life imprisonment or death. The penalty provided in such section for its violation is either death, or imprisonment in the penitentiary for not less than ten years.

A large number of additional insistences of error are specified and argued in the brief filed by the able counsel for the appellant. The principles already enunciated above would in general be applicable to some of these alleged errors. Other alleged errors are unlikely to arise again. These conditions, and a desire to not unduly lengthen this opinion persuade us to pass discussion of these points, of which we reserve further consideration.

Reversed and remanded.