89 So.2d 580

Selma L. HENDERSON

v.

STATE.

4 Div. 326.

Court of Appeals of Alabama.

June 26, 1956.

Rehearing Denied Aug. 14, 1956.

John Patterson, Atty. Gen., and Robt. G. Kilgore, Jr., Asst. Atty. Gen., for the State.

Baldwin & Baldwin, Andalusia, for appellant.

**HARWOOD, Presiding Judge.**

The indictment against this appellant contained two counts, the first charging an assault with intent to rape, and the second charging carnal knowledge of a girl over 12 but under 16 years of age.

The evidence presented by the State tended to show that the appellant and the father of the prosecutrix worked in a woods crew, and often rode together to and from work.

On the morning in question the appellant had gone to the home of prosecutrix in order to ride to work with her father. The father and appellant decided not to go to

work that day. After a short while the father left the house and went to Adams' garage.

The prosecutrix, a girl 13 years of age, was at home tending the three younger children, the oldest being a boy about four years old.

After her father left the house, the following took place, according to the prosecutrix:

"Q. Tell the jury just what happened there? A. I was in the back cleaning the room up and he came in there and grabbed me and threw me across the couch and pulled my panties down.

"Q. What else did he do beside that? Did he take his private part out? A. Yea.

"Q. Did he put it to your private part? A. Yeah.

"Q. What did you do? A. I hollered.

"Q. Then did he turn you loose? A. Yeah.

"Q. Was anybody else there at the time? A. My brothers and sisters were there.

"Q. How old were your brothers and sisters? A. They was little.

"Q. While this was going on did the children come in there, any of them? A. My brother did, Richey, he is not but four.

"Q. Did he come in the room? A. Yeah.

"Q. Did Selma turn you loose then? A. Yes.

"Q. What did he say? A. Well, he said he had to go and if I told anything about it he would kill me; he was coming back."

The prosecutrix further testified that when appellant turned her loose she went out on the front porch. The appellant tried to pull her back, but she made it to the porch and saw a next door neighbor, Doris Simpson, to whom she made a report of the occurrence.

The appellant left the house, first telling the prosecutrix he would kill her if she told anyone about what had happened.

In a few minutes the appellant returned with prosecutrix's father and the two men worked for awhile on a ditch in front of the house, after which the appellant departed.

About noon her father went to ride her mother home from her job. Upon the arrival of her parents she reported appellant's alleged behavior to them.

The appellant testifying in his own behalf related he had gone to the house as stated. The father of the prosecutrix left, and he remained at the house about twenty minutes, and left. Meeting the father a short distance from the house the appellant returned with him and helped him work on a ditch.

The appellant denied he had at any time molested the prosecutrix in any way, and stated that he only remained at the house long enough to help the prosecutrix clean up some spilled milk. Meeting the father a short distance from the house he returned and helped him work on the the ditch, after which he left.

The appellant further testified that the father of the prosecutrix had approached him after issuance of the warrant and had said that if appellant would pay him $100, the prosecution would be dropped.

In rebuttal the father denied such offer and stated that on the contrary the appellant had talked to him in an effort to get the case dropped on payment of money.

At the conclusion of the evidence the court gave the affirmative charge in appellant's favor as to count 2 of the indictment, that is, the carnal knowledge count.

█ We are here now dealing solely with assault with intent to rape. This offense is separate and distinct from the stat-

utory offenses of carnal knowledge of, or abuse in an attempt to carnally know, a female of tender years, as denounced in Sections 398 and 399 of Title 14, Code of Alabama 1940. Therefore, regardless of the age of the female, we are to look to the law concerning rape in reaching our conclusions. Toulet v. State, 100 Ala. 72, 14 So. 403; Smith v. State, 34 Ala.App. 45, 38 So. 2d 341.

■ It is an often repeated principle of our decisions that to justify a conviction for assault with intent to rape the State must show such acts and conduct on the part of the accused as would leave no reasonable doubt of his intention to gratify his lustful desire against the female notwithstanding resistance on her part. Pumphrey v. State, 156 Ala. 103, 47 So. 156; McCarter v. State, 32 Ala.App. 352, 26 So. 2d 211. The offense includes all the elements of rape, except consummation of the sexual act, Smith v. State, supra, and where the evidence is substantial the existence of the felonious intent must be left to the jury. Gilbert v. State, 28 Ala.App. 206, 180 So. 306.

■ Intertwined with above doctrines is the further doctrine that if an accused at any time during the assault had the actual intent to accomplish his purpose in defiance of any resistance on the part of the woman, he is guilty of assault with intent to rape, despite a subsequent abandonment of his purpose. Brooks v. State, 8 Ala.App. 277, 62 So. 569; Duckett v. State, 37 Ala App. 640, 73 So.2d 773.

■ The prosecutrix's testimony to the effect that the appellant threw her on a couch, pulled her panties down, and put his private parts against hers and desisted only when she "hollered," was, we think, sufficient evidence of an existing felonious intent on the part of the appellant, to justify a finding by the jury to the required degree, of the essential elements of the offense charged.

The appellant's desistance upon the girl's outcry could not serve to blot away the completed crime if the felonious intent accompanied by force, existed at any time before the abandonment of his purpose.

■ Consent being a defense to a charge of rape, and perforce to the charge of assault with intent to rape, counsel for appellant lays much stress upon certain answers of the prosecutrix to questions propounded to her upon her recall to the stand. In order to clearly illustrate our conclusions we set forth the material portions of this examination, as follows:

"Re-Direct Examination

"By Mr. Boswell: Q. Shirley Jean, at the time you have testified about when he threw you down and pulled off your pants and threatened to put his private part in your private part, did you consent for him to do that? A. No, sir.

"The Court: All right. Any further cross examination?

"Mr. Baldwin: No questions.

"The Court: Let me ask you this, young lady, was that conduct on his part that you testified about against your will? A. What?

"The Court: Was the conduct of the defendant, Mr. Henderson, about which you have testified on that occasion or stated or told us awhile ago, was that against your will?

"Mr. Baldwin: We object. It calls for a conslusion.

"The Court: Overrule it.

"Mr. Baldwin: We except.

"The Court: Was that against your will or desire for him to do that? A. Well, I didn't tell him he could do it.

"The Court: Were you willing to it? A. Yeah.

"The Court: Willing for him to put you down on the floor? A. No.

"The Court: And throw you on the bed?"

■ The action of the girl in making an outcry, in making her way to the porch, in making complaint to her mother and father, and her statement that she did not consent bespeak much louder the lack of consent, and resistance on her part than her confused answers to the questions propounded to her by the court on her recall examination. The jury and the learned trial judge apparently likewise so concluded. All in all, under the entire evidence, we think that no consent is reasonably inferred.

■ The lower court therefore did not err in denying appellant's motion to exclude the evidence, in denying his request for the general affirmative charge as to count 1, and in denying his motion for a new trial on the grounds of the insufficiency of the evidence to support the verdict and judgment.

Affirmed.

On Rehearing

In brief in support of application for rehearing counsel for appellant has requested that we extend this opinion to show that following the last answer in that portion of the redirect examination set out toward the latter part of our opinion, the prosecutrix further testified that appellant did not hurt her when he put his private part on hers.

The record also shows that while the prosecutrix saw Doris Simpson when she went onto the porch as set out in the opinion, she did not make complaint to her until after the appellant had left.

We cannot see that the above facts can have any material influence upon the conclusion originally reached by us. The application for rehearing is thereby denied.

Application overruled.