HARRIS, Presiding Judge.
Appellant was convicted of the offense of carnal knowledge of a girl under twelve years of age and the jury fixed his punishment at nineteen years and six months in the penitentiary. At arraignment, in the presence of his attorney, he pleaded not *999 guilty. After sentence was imposed, he gave notice of appeal and was furnished a free transcript. Trial counsel was appointed to represent him on this appeal.
The evidence was in sharp conflict. The victim was the stepdaughter of appellant and lived in the same house with him, her mother, two brothers and an infant sister. Appellant and his wife both worked but had different hours of employment. Appellant worked in the mornings and got off around 2:00 p. m. The mother went to work at 2:00 p. m. and got off around 10 o’clock each night. The victim and her brothers went to school and got back home around 2:30 or 3:00 p. m. We will set forth the evidence to prove appellant’s conduct and involvement with the victim.
The victim testified that she was born on January 10, 1965, and was twelve years of age at the time of appellant’s trial; that appellant and her mother had been married about eleven years. She spent the Christmas holidays with her aunt in Birmingham and then returned home to go back to school. In January of 1977 they were living at 227 Swan Lake Drive, Hope Hull, Montgomery County, Alabama, and she attended the Southlawn public school located about two miles from her home. She further testified that a couple of days or a week after she had started back to school she came home and appellant was there and was baby-sitting for her infant sister. She stated that her two brothers, ages thirteen and eleven, were told by her stepfather to go out of the house and play. She told her stepfather that she wanted to go play also, but he told her she had to stay in the house and watch the baby.
After the victim’s brothers went out of the house appellant told her he wanted her to do something for him and she protested as she knew what he meant and appellant started poking and tickling on her body. He then took off her shorts and pants. She told him that she didn’t want to do it and he said he was going to make her do it. Appellant then put her on the couch in the living room and got on top of her. In her words, “He took and laid on top of me and stuck his private into mine.” She felt him inside her and he remained inside her for a few minutes. He got off her and told her to go to the bathroom and wipe off. When she went into the bathroom, she noticed there was some “white stuff” between her legs and on her privates. She wiped it off and also wiped the inside of her private and removed all the fluid she could. She further stated that “when he first started doing it, he said not to tell anybody. He said don’t tell my Mama because she would whip me and then he would.”
The victim stated she did not tell her mother what her stepfather had done to her until about February 16, 1977. She explained she told her mother after watching the “Baretta” show on television where a “girl’s stepfather took her and went with her and got her pregnant." After viewing the show she became afraid and decided to tell her mother.
The victim further testified that her stepfather first had sexual relations with her when she was nine years of age and the last time was just before her twelfth birthday. She said that appellant had sexual relations with her more than five times from the time she was nine years old until she was eleven. She further stated that no one else had ever done this to her.
After the victim told her mother everything her stepfather had done to her, the mother carried her to Dr. Mont Highley, a medical doctor in Montgomery, whose qualifications were admitted by the defense. The doctor gave her a pelvic examination involving the vaginal area and the female organs.
From the record:
“The patient was brought to me by her mother giving a history of having had intercourse and she wanted her examined to be sure she did not have an infection, number one, and was not pregnant. Her condition was, number one, she did have a vaginal infection. It was not a venereal type infection. It is one commonly seen in women who are sexually active called trichomoniasis, and the other was that she was not a virgin.”
*1000 On cross-examination Dr. Highley testified, “what she told me was that the patient had been engaging in sexual activity with her stepfather since December. That is what I was told at that time.” He further stated that the girl was not a virgin but he did not know who destroyed her hymen.
The victim’s mother testified that on February 16, 1977 she had a conversation with her daughter about what appellant had been doing to her — that he had been having sex with her. Her daughter told her that it had been several times. She carried the victim to Dr. Highley who examined her and “he confirmed it that somebody had been going with her.”
The mother issued a warrant for the arrest of appellant and moved her children to Jefferson County where the victim would be safe from appellant. She subsequently got a divorce from appellant.
On cross-examination she was asked her feelings toward appellant and she replied, “Well, if he is guilty of it, I want him punished. If he is not guilty, I want him turned loose.”
Appellant offered the testimony of the two brothers of the victim both of whom testified that they had never seen appellant do anything wrong to the victim. One of them testified that he had seen a thirteen year old boy, Andy Ash, do something wrong with the victim but he never stated what he had seen. He said his stepfather was never in the house alone with the victim while he and his brother were playing outside the house.
The testimony of the other brother was of like import. He further stated that he saw his sister kissing a boy named Wade who was nineteen years of age.
Appellant offered the testimony of one Henry Cox, a minister of the Trinity Baptist Church on the Old Selma Road, who testified that appellant’s character and reputation were good in the community.
On cross-examination he stated appellant never came to his church; that he got to know him primarily as a customer at his place of business.
Appellant testified in his behalf and denied that he had ever done anything wrong with his stepdaughter.
On cross-examination he testified that he worked at the Thrifty Service Station on Lower Wetumpka Road and that his hours of employment were from 6:00 a. m. until 2:00 p. m. He said that his wife worked from 2:00 p. m. to 10:00 p. m. He stated that his stepdaughter went to Birmingham on December 24,1976 and stayed until January 9, 1977. He said there was snow on the ground and she couldn’t get back from Birmingham and the schools were closed. He stated that his stepdaughter was not even in Montgomery at the time it was claimed he had sexual intercourse with her.
On rebuttal the State called the principal of the Southlawn Elementary School who testified that she was custodian of the records of the school. She stated that the attendance record of the victim showed she was in school from January 3 through January 7, 1977. This attendance record was marked State’s Exhibit 2 and introduced into evidence. State’s Exhibit 1 was a certified copy of the birth certificate showing the victim was born on January 10, 1965, and it was introduced into evidence.
State’s Exhibit 2, the school attendance record, served to thoroughly impeach the testimony of appellant to the effect that victim went to Birmingham on December 24,1976, and did not return until January 9, 1977.
Conflicting testimony is for the jury and a verdict rendered thereon will not be disturbed on appeal. Woods v. State, Ala. Cr.App., 344 So.2d 1225; Young v. State, Ala., 346 So.2d 509; Carlton v. State, Ala. Cr.App., 342 So.2d 1382.
In a prosecution for carnal knowledge of a girl under twelve years of age, the condition of the genital organs of the victim after the offense is a relevant inquiry. Malloy v. State, 209 Ala. 219, 96 So. 57; Jenkins v. State, Ala.Cr.App., 339 So.2d 133.
*1001 Carnal knowledge is a statutory crime and was unknown to the common law. The design and breadth of our carnal knowledge statutes are to protect young girls of tender years from falling victims to the wiles, schemes, debasedness, and depravity of oversexed men who use arts of flattery and other inducements to persuade them to surrender their most precious possession to the gratifications of men who have lost their moral values and think of nothing save their animal instincts regardless of specific intent on the part of an accused to carry forward by the force the sexual act to completion, and regardless of consent or non-consent of the child. While consent is a defense in rape cases it is absolutely no defense to prosecutions under our carnal knowledge statutes. Owens v. State, 29 Ala.App. 53, 191 So. 899; Smith v. State, 34 Ala.App. 45, 38 So.2d 341; Powell v. State, 53 Ala.App. 30, 297 So.2d 163.
In McElroy’s Alabama Evidence, Third Edition, Gamble, Section 45.11(3), it is stated:
“In a prosecution for having carnal knowledge of a female under a specified age, the state may prove that the accused, prior to the act upon which the prosecution is based, had sexual relations with the female. The state is also permitted to prove that the accused engaged in undue familiarity with the female. The Courts have likewise affirmed the prosecution’s right to prove that the accused, subsequent to the act upon which the prosecution is based, had sexual relations with the prosecutrix.” (citing five Alabama cases).
We find no error in the record prejudicial to appellant. The evidence was more than ample to sustain the verdict and the judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.