Appellant was convicted for the offense of carnal knowledge of a girl under twelve years of age. The trial court sentenced him to life imprisonment in the penitentiary. At arraignment, in the presence of counsel, he pleaded not guilty. After sentence was imposed appellant gave notice of appeal. He was furnished a free transcript and trial counsel was appointed to represent him on this appeal.
The sufficiency of the evidence is not presented for review. There was no motion to exclude the State's evidence; there was no request for the affirmative charge; there was no motion for a new trial; and no exceptions were reserved to the oral charge of the court.
The evidence presented by the State is undisputed. Appellant did not testify nor did he offer any evidence in his behalf.
The victim was a ten year old girl and on the night of October 31, 1977, (Halloween night) she and three of her girl friends went "trick or treating." The victim was dressed in a costume and had blotches of rouge on her forehead, chin and cheeks. The girls left home at about 5:30 o'clock on that date and during the course of the afternoon they started walking down the railroad track, each carrying a bag of candy and other things they had collected from generous people in the neighborhood. While walking on the track in a group they noticed two men following close behind them. The victim tripped and fell on the track and one of the men grabbed her from behind. Her friends started to her rescue but saw one of the men run his hand in his pocket and they ran from the scene. The victim's friends went to a house nearby and reported that the victim had been abducted by two black men. The victim's mother was called and the police were notified. The mother and the police arrived at the scene but were unable to locate the missing girl.
According to the testimony of the victim appellant and his companion forced her to accompany them. They crossed East Broad Street near the James L. Cain School and *Page 1251 
went behind the school to a cemetery where appellant's companion, Larry Taylor, ordered the young girl to remove her clothing. She refused to do so. The men carried the victim across Davis Street to an abandoned store where she was again ordered to disrobe and she again refused to remove her clothing. The men became very angry and in a violent and threatening tone of voice directed the victim to undress and lie on the floor. She complied with these commands and Larry Taylor had sexual intercourse with her while she was crying and protesting. She kept begging him to stop as he was hurting her. He refused to heed her outcries and completed the sexual act. Appellant then had sexual intercourse with the helpless victim while she was still crying and begging him to stop. After this traumatic experience the victim was instructed to dress.
After the victim dressed the men forcibly carried her in an automobile and drove her to an unidentified house. They forced her to enter the house and into a bedroom where both men took turns in having sexual intercourse with the girl. They kept her in this house all night. The next morning appellant led the victim from the house and gave her directions to Goss Avenue. When she arrived at Goss Avenue, she went to a house and asked to use the telephone to call her mother. Her mother was not at home at the time. She had been out all night walking the railroad track looking for her daughter with a flashlight. The victim's brother and stepfather came and picked her up. She was carried home and then to Police Headquarters where she gave the officers a description of her assailants. From there she was carried to the hospital for treatment. She was so distraught and mentally disturbed she lost the following week from school.
In the meantime the officers began an intensive search for the two men involved in the assault upon the young girl. They apprehended and interviewed Larry Taylor first. On the night of November 1, 1977, appellant was arrested at the home of one of his friends. He was taken to jail where he was told he was charged with kidnapping and rape. He was not interviewed at that time but put in a cell while the officers continued their investigation on this particular case.
Approximately three hours later the officers returned to the jail and had the jailer bring appellant to the interrogation room. Before appellant was questioned he was given the Miranda
rights and warnings and he told the officers he understood his rights and did not want a lawyer. He signed a waiver of rights form and gave a confessory statement in his own handwriting.
Appellant filed a motion to suppress the statement written by him. A voir dire hearing was conducted out of the presence and hearing of the jury to determine the voluntary character of the confessory statement. At this hearing it was shown that appellant was not threatened or coerced in any manner to get him to make the confessory statement. It was further shown that no promises, rewards or hopes thereof, or inducements of any kind were made, or held out to appellant, to get him to write the statement or to sign the waiver of rights form. At the conclusion of the hearing the trial court ruled that the confessory statement was voluntarily, knowingly and understandingly made.
Back before the jury the State laid the proper predicate and the waiver of rights form was admitted into evidence without objection. Appellant objected to the introduction of the written confession on the ground the officers had told appellant that he was charged with kidnapping and rape and not carnal knowledge of a girl under twelve years of age.
Appellant contends that the officers should have told him that he would be charged with carnal knowledge of a girl under the age of twelve and that consent to such a charge was no defense.
The officers testified that they went to the District Attorney's Office and gave them the facts of the case and that it was the District Attorney's Office who made the decision to charge the appellant with offense for which he stands convicted. *Page 1252 
The trial court determined at the voir dire hearing that the confession was voluntarily made and upon the proper predicate being laid the written confession made by appellant was introduced into evidence.
"STATEMENT OF:
Date: 11-1-77 Page No. 1
 "Frederick Hall 21-1707 Litchfeil Ave. 7:30. Larry Taylor and I left his house went over by Hillside Circle. Saw about four girls walking we went over by the realroad (sic) Track. thay (sic) was in front of us. Larry grab one of them. trow (sic) her on the ground see (sic) hollow (sic) Larry hit her in the face. we went down the track. I kept telling him to let her go he never said a word. we got off the track went cross east Broad went behind the school went trou (sic) the grave yard stop at the old store on davis (sic). Larry told her to take off her close (sic) and lay down Larry made love to her first then me Larry left went to he (sic) house Came back with Jimmy and the car. Larry put the coat over her head walked her to the car. got in the back seat, I got in the front. we went to Larry house got out the car. Larry picked her up carryed (sic) her to the house. went right to the bedroom Larry went first again Jimmy and I was in the Living room then roger Came said what's happyining (sic) I said it's a girl in the back. He came in and sit down then Larry came out then I went in after I got through Jimmy went in then Later on Victor came. roger had left. Victor said that he had talk to some police man's on his was (sic) up. but he never did call no name. Larry had went out the back door went to the front door put the lock on it. Came back in the house through the back. lock the screem (sic) and back door from the inside. After Victor had goten (sic) through
 /s/ Frederick Hall Witness: Sgt. N.W. Griffin Officer J.B. Jeffers
"STATEMENT OF:
Date: 11-1-77 Page No. 2%bj
 "Frederick Hall — 21-1707 Litchfeil Ave "he came in Liveing (sic) room where I was at the time Larry, Victor and me was the only one there beside the girl everyone els (sic) had left. so after Victor came in the liveing (sic) room Larry went back in the bedroom and got back in the bed. Victor and I talk for a while, then Victor left saying he was going home. the girl kept saying she was sleepy and tirded (sic) by that time I was laying on the softer (sic) in the liveingroom (sic) and I went to sleep leaveing (sic) Larry and the girl on the bed. This Statement is true and courect (sic) to the best of my nolet (sic) and no trate (sic) or promise had been made to me
/s/ Frederick Hall
 Witness: Sgt. N.W. Griffin Officer J.B. Jeffers"
The rule is that extrajudicial confessions are prima facie involuntary and inadmissible and the duty rests in the first instance on the trial court to determine whether or not a confession is voluntary and, unless it so appears, it should not be admitted. Myhand v. State, 259 Ala. 415, 66 So.2d 544;Phillips v. State, 248 Ala. 510, 28 So.2d 542; Hines v. State,260 Ala. 668, 72 So.2d 296; Womack v. State, 281 Ala. 499,205 So.2d 579; Bass v. State, 55 Ala. App. 5, 312 So.2d 576;Botsford v. State, 54 Ala. App. 482, 309 So.2d 835.
Once the trial judge has made a determination that a confession was freely and voluntarily made the probative effect to be given to the confession is for the jury. Myhand v. State, supra.
This was a horrible crime, cold, deliberate and calculated, and it took the jury only fifteen minutes to return a verdict finding appellant guilty as charged in the indictment. As we have said on other occasions it is a sad commentary upon the very name of civilization of the ease with which human beings are transformed into beasts.
We hold the confession was properly admitted into evidence.
Appellant asserts that the statute under which he was indicted and prosecuted is violative of the Equal Protection Clause of the Fourteenth Amendment. We do not agree. *Page 1253 
The State has a vital interest in the protection of young girls from the animalistic instincts of such men. It is the declared public policy of this State and in no wise runs afoul of the Equal Protection Clause of the Fourteenth Amendment, or any other constitutional provision.
In Powell v. State, 53 Ala. App. 30, 297 So.2d 163, we held:
 "Carnal knowledge is a statutory crime and was unknown to the common law. Title 14, Sections 398 and 399, Code of Alabama, has the effect of changing and broadening the common law and they fix the public policy of this state with respect to the crime of rape and kindred offenses. While consent is a defense in rape cases it is absolutely no defense to prosecutions under our carnal knowledge statutes, supra. This court said in Owens v. State, 29 Ala. App. 53, 191 So. 899:
 "`A different rule applies in prosecutions for rape and kindred statutory offenses. If the female is over sixteen years of age she may consent, and if the intercourse is had with her consent it is not rape. If, however, the intercourse is had by force and against her will the offense is complete, and the defendant would be guilty of rape. If the female is under sixteen years of age and sexual intercourse is had, with or without the consent of the female, the statutory offense of carnal knowledge would be complete. The effect of the statutes, hereinabove cited, is to raise the age of consent and to fix a different punishment on convictions for rape and kindred statutory offenses where the intercourse is with the consent of the female, and she is of an age between twelve and sixteen years. If the intercourse is had by force and against the will of the female, there would be no reduction in the punishment.'
 "The design and breadth of our carnal knowledge statutes are to protect young girls of tender years from falling victims to the wiles, schemes, debasedness, and depravity of over-sexed men who use arts of flattery and other inducements to persuade them to surrender their most precious possession to the gratifications of men who have lost their moral values and think of nothing save their animal instincts regardless of specific intent on the part of an accused to carry forward by force the sexual act to completion, and regardless of consent or non-consent of the child. Smith v. State, 34 Ala. App. 45, 38 So.2d 341."
We have carefully searched the record for errors affecting the substantial rights of appellant and have found none. He was accorded a fair and impartial trial, and the sentence imposed fits the crime for which he was convicted.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.