The Grand Jury of Dallas County returned an indictment against the appellant, Arthur Larnell Baynes, charging him with the offense of rape in the second degree, a Class C felony, in violation of Section 13A-6-62 of the Code of Alabama, 1975. The appellant entered a plea of not guilty. A jury returned a verdict finding the appellant guilty of rape in the second degree as charged in the indictment. The trial court *Page 308 
duly sentenced the appellant to the penitentiary for a period of ten years. The appellant duly appealed to this Court.
The appellant was represented at all proceedings in the trial court by counsel of his choice, and is so represented in this Court. This appeal was submitted to this Court on briefs.
The appellant states in his brief three reasons why his conviction should be reversed because of prejudicial error of the trial court: (1) in ruling that Code of Alabama, 1975, Section 13A-6-62 does not violate the equal protection clause of the fourteenth amendment, because it is strictly a sex and gender based statute; (2) in refusing to give jury charges one and three; (3) in admitting state exhibits.
State's evidence tended to prove that on May 24, 1981 at about 2:30 or 3:00 o'clock, A.M. the victim of the crime charged against the appellant was a fourteen-year-old girl child, was asleep in her bed in her bedroom in her home in the City of Selma, Dallas County, Alabama, when the appellant, a twenty-nine-year-old male, came into her bedroom and waked her up, got on her bed, and pinned her arms down, and pulled her panties down, threatened to strike her if she screamed out, and had intercourse with her by placing his private parts in her private parts. The appellant did not testify in his own behalf. There being ample evidence in the record to sustain the jury's verdict, a detailed statement of all the facts surrounding the charge against the appellant would serve no useful purpose.
The appellant's first argument in his brief is that Code of Alabama, 1975, Section 13A-6-62, is unconstitutional because it is strictly a sex and gender based statute in violation of the equal protection clause of the fourteenth amendment of the Constitution of the United States of America.
Section 13A-6-62 provides:
"Rape in the second degree.
 "(a) A male commits the crime of rape in the second degree if:
 "(1) Being 16 years old or older, he engages in sexual intercourse with a female less than 16 and more than 12 years old; provided, however, the actor is at least two years older than the female.
 "(2) He engages in sexual intercourse with a female who is incapable of consent by reason of being mentally defective. "(b) Rape in the second degree is a Class C felony. (Acts 1977, No. 607, p. 812, Sec. 2311; Acts 1979, No. 79-471, p. 862, Sec. 1.)"
This Court and the Supreme Court of the United States Of America have recently passed upon similar statutes and held them to be valid and not in violation of the fourteenth amendment.
We quote from the case of Smith v. State, Ala.Cr.App.,409 So.2d 455, at page 460, where Judge Tyson of this Court said:
 "(8) True these statutes clearly single out males for more severe punishment than that provided for females who commit a similar crime. However, Section 13A-6-61 (the only statute challenged in the instant case) will withstand constitutional scrutiny if its `gender-based' classification is reasonable, not arbitrary, and rests upon some ground of difference having a fair and substantial relationship to the objective of the legislation. (Emphasis Supplied) Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); Hobson v. Pow, 434 F. Supp. 362 (1977).
 "The obvious objective of Section 13A-6-61 (a)(1) (the only portion of this statute under attack) is to protect females from sexual attacks by males which result in nonconsensual sexual intercourse. This objective is a legitimate state interest because of the potential harm to the victim and society.
[Emphasis Supplied] Female victims of nonconsensual sexual intercourse by males are subjected to a possible unwanted pregnancy and the medical, physical, sociological, moral, and psychological problems associated therewith, in addition to the physical injuries and psychological traumas potentially inflicted upon any victim of a sexual assault. This `unwanted pregnancy' risk to *Page 309 
the victims is uniquely characteristic of nonconsensual sexual intercourse perpetrated by males upon females in contrast with the similar act committed by a female upon an unwilling male. This specific characteristic of the crime described in Section 13A-6-61 (a)(1), which presents the possibility of a higher degree of harm to its victims than does its counterpart described in Section 13A-6-65 (a)(2), is the clearest example of a `ground of difference' sufficient to justify this `gender-based' classification.
 "Moreover, `rape' of females is a long recognized and very serious problem in this state due not only to the severity of this potential harm to its victim but also to the frequency with which it occurs. This frequency factor further distinguishes a Section 13A-6-61 (a)(1) crime from a Section 13A-6-65 (a)(2) crime. The appellant has not presented and we are not aware of any evidence to the effect that nonconsensual sexual intercourse by females is as serious a problem as nonconsensual sexual intercourse by males.
 "Moreover, such nonconsensual sexual intercourse often results in unwanted pregnancy. This too often results in society having to care for the victims who are the result of such attacks, as well as the children born as the result of such.
 "These reasons are clearly a sufficient basis for legislative action.'"
And again we quote from Hall v. State, Ala.Cr.App.,365 So.2d 1249, at page 1253; Certiorari Denied, Ala., 365 So.2d 1253, where Harris, Presiding Judge of this Court, said:
 "The state has a vital interest in the protection of young girls from the animalistic instincts of such men. It is the declared public policy of this State and in no wise runs afoul of the Equal Protection Clause of the Fourteenth Amendment, or any other constitutional provision."
We quote from the case of Michael M., Petitioner, v. SuperiorCourt Of Sonoma County (California, Real Party in Interest),450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437, where Justice Rehnquist, speaking for the Supreme Court of The United States of America, in a case involving challenges to gender-based classifications, said:
 "We have not held that gender-based classifications are `inherently suspect' and thus we do not apply so-called `strict scrutiny' to those classifications. See Stanton v. Stanton, 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975). Our cases have held, however, that the traditional minimum rationality test takes on a somewhat `sharper focus' when gender-based classifications are challenged. See Craig v. Boren, 429 U.S. 190, 210 n.*, 97 S.Ct. 451, 50 L.Ed.2d 397
(1976) (Powell, J., concurring). In Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), for example, the Court stated that a gender-based classification will be upheld if it (450 U.S. 469) bears a `fair and substantial relationship' to legitimate state ends, while in Craig v. Boren, supra [429 U.S.] at 197, 97 S.Ct. 451, 50 L.Ed.2d 397, the Court restated the test to require the classification to bear a `substantial relationship' to `important governmental objectives.'
 "Underlying these decisions is the principle that a legislature may not `make overbroad generalizations based on sex which are entirely unrelated to any differences between men and women or which demean the ability or social status of the affected class.' Parham v. Hughes, 441 U.S. 347, 354, 99 S.Ct. 1742
[1747], 60 L.Ed.2d 269 (1979) (plurality opinion of Stewart, J.,). But because the Equal Protection Clause does not `demand that a statute necessarily apply equally to all persons' or require `things which are different in fact . . . to be treated in law as though they were the same,' (Emphasis Supplied) Rinaldi v. Yeager, 384 U.S. 305, 309, 86 S.Ct. 1497 [1499-1500], 16 L.Ed.2d 577 (1966), quoting Tigner v. Texas, 310 U.S. 141, 147, 60 S.Ct. 879 [882], 84 L.Ed. 1124, 130 A.L.R. 1321 (1940), this Court has consistently upheld statutes where the gender classification is not invidious, but rather *Page 310 
realistically reflects the fact that the sexes are not similarly situated in certain circumstances. . ..
 "We are satisfied not only that the prevention of illegitimate pregnancy is at least one of the `purposes' of the statute, but also that the State has a strong interest in preventing such pregnancy. At the risk of stating the obvious, teenage pregnancies, which have increased dramatically over the last two decades,[3] have significant social, medical, and economic consequences for both the mother and her child, and the State. [4] (450 U.S. 471, 101 S.Ct. 1205)
 "Of particular concern to the State is that approximately half of all teenage pregnancies end in abortion. [5] And of those children who are born, their illegitimacy makes them likely candidates to become wards of the State. [6]
 "We need not be medical doctors to discern that young men and young women are not similarly situated with respect to the problems and the risks of sexual intercourse. Only women may become pregnant, and they suffer disproportionately the profound physical, emotional, and psychological consequences of sexual activity. The statute at issue here (450 U.S. 472, 101 S.Ct. 1206) protects women from sexual intercourse at an age when those consequences are particularly severe. [7]
 "The question thus boils down to whether a State may attack the problem of sexual intercourse and teenage pregnancy directly by prohibiting a male from having sexual intercourse with a minor female. [8] We hold that such a statute is (450 U.S. 473, 101 S.Ct. 1206) sufficiently related to the State's objectives to pass constitutional muster.
 "Because virtually all of the significant harmful and inescapably identifiable consequences of teenage pregnancy fall on the young female, a legislature acts well within its authority when it elects to punish only the participant who, by nature, suffers few of the consequences of his conduct.'"
Even though Code of Alabama, 1975, Section 13A-6-62, is clearly gender-based, it is not necessarily unconstitutional if its classification is reasonable, not arbitrary, and is based on some grounds of difference having a fair and substantial relationship to the objective of the legislature. The State of Alabama has a vital interest in the protection of its society, and the protection of young girls from the consequences that usually follow from the pregnancy of its young girls.
We hold that Alabama Code, 1975, Section 13A-6-62, does not violate the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States of America, or any other constitutional provision. Smith v. State, supra; Hall v.State, supra; Michael M., Petitioner, v. Superior Court OfSonoma County (California, Real Party in Interest), supra;Hepstall v. State, Ala.Cr.App., 418 So.2d 223.
The appellant's next contention in his brief is that the trial court erred to his prejudice by refusing to give jury written charges numbers one and three requested by the appellant. Refused jury charge number one reads, as follows:
"DEFENDANT'S REQUESTED CHARGE
NUMBER ONE
 "I charge you, ladies and gentlemen, of the jury that if from the evidence you are reasonably satisfied the complainant's character for truth and veracity has been impeached you may disregard all her evidence. Harrison v. State, 28 Ala. App. 17, 178 So. 454 (1937).
"Refused — J.C. Norton, Judge"
Refused jury charge number three reads, as follows:
"DEFENDANT'S REQUESTED CHARGE
NUMBER THREE
 "I charge you, ladies and gentlemen, of the jury that if you believe the alleged victim lied on her oath about any material *Page 311 
fact in this case, you may disregard all her testimony.
"Refused J.C. Norton, Judge"
We quote from the judge's oral charge to the jury:
 "You gentlemen take the testimony of all the witnesses, together with all proper and reasonable inferences therefrom, apply your own good common sense, and in an honest and impartial way determine what you believe to be the truth. You should weigh all of the evidence and reconcile it if you can reasonably do so; but if there be irreconcilable conflict in the evidence you ought to take that evidence which you think is worthy of credit and give it just such weight, as you think it is entitled to. You may take into consideration any interest any witness might have in the outcome of this case. If you believe that any material part of the evidence of any witness is willfully false, you may disregard all of the testimony of such witness. If any witness testifying has been impeached, then the jury may disregard his or her testimony unless his or her testimony be corroborated by other testimony not so impeached."
We hold that the Rule of Law sought to be stated by the refused charges was substantially and fairly given to the jury in the Court's oral charge. There was no error in the Court's refusal to give written charges one and three. Code Of Alabama,1975, Sec. 12-16-13; Allred v. State, Ala.Cr.App.,390 So.2d 1109, Certiorari Denied, Ala., 390 So.2d 1114.
The appellant's third contention in his brief is that his objections to the admission of all of state's exhibits should have been sustained because the chain of evidence had not been sufficiently proven because: First, the panties that were thrown into the dirty clothes basket were not proven to be the panties plaintiff initially had on; Second, the rape kit administered by nurse Porifory was left out in the open and unattended for hours; Third, the panties and gown secured at the alleged scene of the crime were left at the police station unattended.
From a careful examination of the record it appears that the injured party identified the gown and panties introduced into evidence as being the same clothing she had on at the time the crime was committed; that the rape kit was sealed by the night nurse and was sealed when she turned it over to the day nurse and when the day nurse turned it over to the police officer, and during the time it was on the counter in the emergency room either the day nurse or night nurse was present. The chain of possession of all the exhibits that were allowed into evidence was sufficiently proven to allow them into evidence.
We quote from Bowen, Judge of this Court, in the case ofSexton v. State, Ala.Cr.App., 346 So.2d 1177, CertiorariDenied, Ala., 346 So.2d 1180:
 "To warrant the reception of an object in evidence against an objection that an unbroken chain of custody has not been shown, it is not necessary that it be proved to an absolute certainty, but only to a reasonable probability, that the object is the same as, and not substantially different from, the object as it existed at the commencement of the chain."
From our examination of the record we are of the opinion that all of state's exhibits were properly identified and allowed into evidence. Sexton v. State, supra.
We have searched the record and are of the opinion that reversible error does not appear. The judgment of the trial court is due to be and is hereby affirmed.
The foregoing opinion was prepared by Honorable Joseph J. Mullins, a retired Circuit Judge, serving as a Judge of this Court; his opinion is hereby adopted as that of the Court.
The judgment below is hereby affirmed.
AFFIRMED.
All the Judges concur. *Page 312